**No. 57269.**—Leo Kleiner v. United States, protest 167797–K/13039 (New Orleans).

MOLLISON, Judge: The merchandise the subject of this protest consists of sheepskin leather. At the time of importation of the leather here involved, paragraph 1530 (c) of the Tariff Act of 1930, as modified by the British Trade Agreement, T. D. 49753, so far as pertinent, read as follows:

Leather (except leather provided for in subparagraph (d) of paragraph 1530, Tariff Act of 1930), in the rough, in the white, crust, or russet, partly finished, or finished:
If made from sheep or lamb skins:
Imported to be used in the manufacture of boots, shoes, or footwear * * *, 10% ad val.
Other, not including chamois, 20% ad val.

    \*      \*      \*      \*      \*      \*      \*

Vegetable-tanned rough leather made from goat or sheep skins (including those commercially known as India-tanned goat or sheep skins), 10% ad val.

The leather in issue was classified by the collector under the foregoing provision for leather made from sheep skins other than imported to be used in the manufacture of boots, shoes, or footwear, and duty at the rate of 20 percent ad valorem was assessed thereon.

Two claims are made in the protest. The first is that "The merchandise is dutiable at 10% under Par. 1530 (c) as 'vegetable-tanned sheep skins'," and the second is that it is entitled to classification under the provision for leather made from sheep skins imported to be used in the manufacture of boots, shoes, or footwear, and assessment at 10 percent ad valorem accordingly.

The only evidence offered at the trial of the issue was received as follows:

MR. BORCHARDT: I want to move in evidence the affidavits attached to the protest.
MR. FITZGIBBON: No objection to the affidavit.
JUDGE MOLLISON: It may be received. [Tr. p. 2.]

There are five affidavits attached to the protest. The first of these shows on its face that it was sworn to before the vice consul of the United States in Buenos Aires, Argentina, by one Juan Jorge Adler, who identifies himself therein as the

manager of Aguila Cueros S. R. L. of Buenos Aires. The affiant identifies the shipment here involved by consular invoice, date, consignee, and description of the merchandise, following which he declares:

I herewith expressly declare that these tanned roans have been composed of:

Russed Bark Tanned Sheepskins

only.

The second affidavit is by one Leo Kleiner, who identifies himself therein as a wholesaler in leather and the importer of the shipment here involved and states:

That the sheepskins in question were vegetable-tanned and that this fact was known to the custom authorities at the time the duty was ascertained and paid by the aforesaid brokers in New Orleans, Louisiana; that the merchandise in question was resold by me to Fred H. Lowenstein, New York, and was ultimately used solely by reason of its vegetable-tanned condition. That I was also informed and believe that the merchandise in question has been actually used in the manufacture of boots, shoes, or other footwear.

The third affidavit is by one Dorothy Lehman, who identifies herself therein as secretary of the Igoma Import and Export Corp. and states:

* * * that 92,318 ft. of Sheepskins, purchased from Fred H. Lowenstein on February 17, 1944, for the purpose of being used in the manufacture of boots, shoes, or other footwear, were delivered by us to Unipex Trading Company, Inc., as per our invoice of February 19, 1944.

The fourth affidavit is by one Alfred Riess, who identifies himself therein as the treasurer of Unipex Tanning Co., Inc. (formerly Unipex Trading Co., Inc.), and states:

* * * that 92,318 ft. of Sheepskins, purchased from Igoma Import and Export Corp. on February 19, 1944, for the purpose of being used in the manufacture of boots, shoes, or other footwear, were delivered by us to L. E. Beaudin Shoe Company, on February 29, 1944.

The fifth affidavit is by one George V. Foye, who identifies himself therein as manager of the L. E. Beaudin Shoe Co. and states:

* * * that the 92,318 (ft.) of Sheepskins leather, delivered to us by Unipex Trading Co., Inc. on 2/29/1944 have been actually used in the manufacture of boots, shoes or other footwear.

On the issue as to whether the merchandise in question actually consisted of vegetable-tanned sheepskin leather, we are of the opinion that the evidence offered by the plaintiff in the form of the affidavits of Adler and Kleiner, even though there was no objection to the admission thereof into evidence, lacks sufficient probative force to establish a *prima facie* case in favor of the plaintiff's claim. Neither of the affiants shows the basis for any personal knowledge of the particular merchandise involved or of vegetable-tanned sheepskins generally which would qualify him to make the statement as to the tannage of the imported merchandise.

On the issue as to whether the merchandise in question was entitled to the reduced rate of duty applicable to leather made from sheepskins imported to be used in the manufacture of boots, shoes, or footwear, we are of the opinion that the plaintiff has also in this regard failed to establish such facts as would warrant a judgment in his favor.

The provisions of paragraph 1530 (c) providing for such reduced rate of duty are subject to the provisions of subdivision (g) of the said paragraph, which reads as follows:

(g) The Secretary of the Treasury shall prescribe methods and regulations for carrying out the provisions of this paragraph.

The prescribed regulations are found in section 10.84 of the Customs Regulations of 1943, and require, among other things, that an affidavit of intended use be filed in connection with the entry, or at the time of withdrawal in the case of warehoused merchandise, and that within 3 years after the date of the entry of the merchandise, or any authorized extension of such period, affidavits evidencing proof of use be filed.

It appears that the required affidavit of intended use was never filed, and that the affidavits of Kleiner, Lehman, Riess, and Foye, purporting to evidence proof of use, were not filed within the 3-year period, and it does not appear that any extension of such period was ever sought or granted.

In the brief filed on behalf of the plaintiff, the reasonableness of the regulations cited is not attacked, but it is contended that by reason of T. D. 52023 and T. D. 52111, the said customs regulations were modified to permit the filing of documentary proof to support a reduced rate of duty "within such time after liquidation as will permit a valid reliquidation," and that, as the affidavits of Kleiner, Lehman, Riess, and Foye were filed with the protest, valid reliquidation could have taken place.

The ruling of the Bureau of Customs reported in T. D. 52023 was superseded by the ruling contained in T. D. 52111, the effect of which was apparently to liberalize the procedure with respect to bonds given for the production of missing documents.

The pertinent portion of the amended customs regulations reads as follows:

**25. 18 Extensions of periods for compliance with requirements of bonds and stipulations.**—* * *

\*   \*   \*   \*   \*   \*   \*

(c) No application for the extension of the period of any bond or stipulation given to assure the production of a missing document shall be allowed by a collector if such application is received later than 6 months after the expiration of the period of the bond or stipulation, including any prior extension. However, when a bond or stipulation is given for the production of any free-entry or reduced-duty document and a satisfactory document is not produced within the prescribed time but is produced prior to liquidation of the entry or within the period during which a valid reliquidation may be completed, it shall be accepted as satisfying the requirement that it be filed in connection with the entry, and the bond charge for its production shall be canceled.

Assuming without deciding that the quoted portion of the regulation had the effect of waiving the requirement for the filing of the affidavit of intended use and the 3-year period within which proof of use must be submitted in the case of leather imported to be manufactured into footwear, and, further, that such quoted portion of the regulation was applicable to situations such as that in the case at bar, it, nevertheless, does not appear that the affidavits submitted with the protest and here received in evidence constitute such "satisfactory documents" as would compel the acceptance thereof by the collector as satisfying the requirements of the regulations. The affidavits of Lehman, Riess, and Foye do not on their faces identify the merchandise described therein as the merchandise the subject of protest, and there seems to be a hiatus in the proof with respect to its ownership and disposition by Kleiner's vendee, Lowenstein.

On the record made, we have no other course than to overrule the protest, and judgment will issue accordingly.