(Reap. Dec. 11093)

AN-LEE, INC. *v.* UNITED STATES

Entry No. 18915, etc.

(Decided October 25, 1965)

*S. Ira Miller* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Herbert L. Warren* and *Samuel D. Spector*, trial attorneys), for the defendant.

DONLON, Judge: Trial of these consolidated appeals to reappraisement was before Judge Lawrence in Chicago. On his retirement, they were resubmitted and assigned to the writer of this opinion for decision.

The merchandise in issue consists of so-called lighting carbons that were exported from Italy between July 1956, and September 1957. Plaintiff, in its statement filed pursuant to rule 15, describes the merchandise as varying lengths of carbon sticks, a device used in motion-picture theaters in order to focus light upon the screen through the film.

Invoicing and entry were expressed in United States dollars. The merchandise was appraised in Italian lira and on the basis of foreign value.

Plaintiff contends, first, that those lighting carbons in issue here which are more than 14 inches in length, or which are larger than 9 millimeters in diameter, should be valued on the basis of export value, under section 402(d), at the invoice prices as stated in the entry papers in United States dollars; and, second, that those lighting carbons which are 14 inches or less in length and are 9 millimeters or less in diameter, should be appraised on the basis of foreign value in Italy, but that the correct foreign value is "list price less a discount of 55%," which is less than the appraised value.

As to the larger carbons, there is an issue as to the proper basis of appraisement. As to the smaller carbons, foreign value is conceded by both parties to be the proper basis of appraisement, but the amount of the foreign value is in issue.

On trial in Chicago, plaintiff adduced certain testimony. The court received into evidence certain exhibits tendered by plaintiff. Defendant introduced no evidence, either oral or documentary.

Mr. Lee Artoe, testifying for plaintiff, stated that he is the president of An-Lee, Inc., plaintiff in this case; that he is a graduate engineer and "possibly one of the foremost carbon men in the world." (R. 3.) He attended the University of California at Santa Clara, also Northwestern University and the California Institute of Technology; his degrees include the B.S. degree in chemistry and the B.S. degree in chemical engineering. He has been in the carbon business "exclu-

sively" (R. 3) for 12 years, and, during that time, he has imported carbons from abroad, including Italy. The lighting carbons of these appeals he identified as shipments from Elettrocarbonium Co. of Italy, which his company imported.

Mr. Artoe testified that in the past 10 years he has spent 1 or 2 months each year in Italy, and there he has visited factories in connection with his business. On such occasions, he also visited Italian movie theaters, and there observed the technical aspects of Italian film projection systems. He described these projection systems as "lamp houses which are the instruments which contain the carbons to produce the arc to produce the light." (R. 6.) He said that Italian movie theaters are smaller than are such theaters generally in the United States, and that "the equipment specifically known as a lamp house is much smaller than ours." (R. 6.) In response to a question put to him on direct examination, as to whether Italian projection equipment was capable of handling carbon sticks measuring over 14 inches in length and over 9 millimeters in diameter, Mr. Artoe said: "Speaking of 99 percent, no." (R. 6.)

Mr. Artoe asserted that he knows how carbons are offered and sold by Elettrocarbonium Co. for domestic use in Italy; that he acquired such knowledge "As a purchaser and as an engineer with their company" (R. 8), with which he has spent a minimum of 1 month each year; that Elettrocarbonium Co. is the only manufacturer of lighting carbons in Italy; that lighting carbons are his (Mr. Artoe's) own process and Elettrocarbonium makes them for him, under his direction and supervision "according to specifications." (R. 13.)

As to lighting carbons that are 14 inches or less in length and 9 millimeters or less in diameter, Mr. Artoe testified that carbons in those sizes are sold in Italy. He knows the prices "from talking to the purchasers, to the seller, to the manufacturer, to the retailer, the agent, the projectionist, to all of them." (R. 25.) He said he saw sales being made, he saw invoices on billings by Elettrocarbonium Co., and he also saw bills of sale from dealers. Each size of lighting carbon has a different price, and these prices are listed on a printed manufacturer's pricelist. There are discounts off the list prices, available to the "various consumers and agents and resellers and wholesalers and importers." (R. 26.)

Mr. Artoe identified plaintiff's exhibit 7 as a pricelist prepared by Elettrocarbonium Co. for his (Mr. Artoe's) use. The discounts vary according to the category of purchaser and the quantity purchased. He said that in Italy the ultimate user gets a discount of from 20 to 35 percent. Dealers, Mr. Artoe said, get a discount of 45 to 55 percent. There are also quantity discounts. Mr. Artoe said that in Italy carbons were sold in quantities ranging from 3,000 to 4,000, up

to 300,000 to 400,000 pieces; that 10,000 pieces per week was the quantity in which the greatest number of sales were made. Italian retailers who buy lighting carbons for home consumption would get a discount of about 55 percent off list prices. The minimum discount of which Mr. Artoe had knowledge was 20 percent to a little theater in Milano. The pricelist for the Italian market (not in evidence) recited prices in lira, but Mr. Artoe stated that exhibit 7 is a comparable list of prices recited in dollars. (R. 40.)

Mr. Artoe said that he is the only United States importer of lighting carbons from Elettrocarbonium Co. in Italy (R. 42). He said, also, that the manufacturer was willing to sell to others and "anyone could buy" (R. 43), but there were no takers on offers advertised in American magazines and trade papers. (R. 44.)

Exhibits 2 to 6, inclusive, are plaintiff's office copies of the entry and invoice documents filed with official papers in these appeals. Mr. Artoe testified that his company paid the invoice prices for the lighting carbons. As is too well established to require discussion, entry and invoice prices do not prove the price, or value, at which merchandise is freely offered to all purchasers for export to the United States, assuming that such offerings are shown. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

Exhibit 1 is a letter, dated June 18, 1963, to Lee Artoe, president, An-Lee, Inc., written on the letterhead of Elettrocarbonium Co., signed by M. Vendola, and bearing a kind of certification in the Italian language. Mr. Artoe testified that he recognized the signature as that of Mario Vendola, who occupied a position with Elettrocarbonium similar to that of the controller of an American corporation; that he, Mr. Artoe, speaks and reads Italian, and that the certification on the letter was that of an Italian notary, a witness to Mr. Vendola's signature. Defendant objected only to the competency of Mr. Vendola to testify, and not to the sufficiency of the exhibit as meeting the standards prescribed in section 2633 of the Judiciary Law. Judge Lawrence admitted the letter into evidence, presumably as purporting to be an affidavit or deposition. It is neither.

There is no indication that this letter was sworn to or affirmed under oath. At most there is a notarial "certification" in the Italian language, which appears (as Mr. Artoe testified) to be an attestation of the act of signing. As Judge Lawrence pointed out in *S. Parker Hardware Mfg. Corp.* v. *United States*, 47 Cust. Ct. 521, Reap. Dec. 10108, there must be some chain of evidence establishing that statements are, in fact, made under oath applied by an officer having authority to do so, or by affirmation before such an officer. Here there is no such chain of evidence.

Defendant's objection to exhibit 1 was as to the competency of the writer to testify to the facts that are recited. There is nothing of record which shows that the writer had any such knowledge of the business in lighting carbons throughout Italy as to support his testimony. *Fred Selig* v. *United States*, 21 Cust. Ct. 345, Reap. Dec. 7634; *Leo Kleiner* v. *United States*, 30 Cust. Ct. 430, Abstract 57269. Both on that ground, and because the exhibit is not such a proof as section 2633 of the Judiciary Law authorizes, it has little, if any, evidentiary value.

The basis for valuing those carbons that are longer than 14 inches, or larger than 9 millimeters in diameter, is the first issue.

Section 402 of the Tariff Act of 1930, as amended, effective on the dates of these importations in 1956 and 1957, provided that the first basis to be considered in valuing imported merchandise is the foreign or the export value, *whichever is higher*. Appraisement was on the basis of foreign value, in an amount higher than the export value which plaintiff claims. Accordingly, unless plaintiff's proofs have negatived the existence of any foreign value, the appraised values will prevail.

Foreign value, as defined in section 402(c), is the market value, or price, at which merchandise such as or similar to that imported is freely offered for sale *for home consumption* in the country of exportation to all purchasers in the usual wholesale quantities and in the ordinary course of trade. Export value, as defined in section 402(d), is the market value, or price, at which the imported merchandise is freely offered in the country of exportation *for export to the United States*, with other provisions essentially those above recited as to foreign value.

Plaintiff argues that there is no foreign value in Italy for lighting carbons that are longer than 14 inches or larger than 9 millimeters in diameter, for the reason that the projection equipment in Italian theaters is not capable of handling carbons of such size. The record does not quite support this argument.

The fact as to which Mr. Artoe testified, and his testimony was not contradicted, is that as to 99 percent of the industry, projection equipment cannot handle the large carbons. (R. 6.) Exhibit 1, introduced into evidence by plaintiff, states that there are no home market (Italian) users of carbons longer than 14 inches "except for about less than 5% in these sizes which are for special showings."

Plaintiff's analysis of the above evidence appears to be that a home market of less than 5 percent, perhaps only 1 percent, is not a market or, at the least, is a restricted market. However, section 402 has not heretofore been construed as requiring some particular size of the market, in order to constitute it a market to which the statute refers. Section 402 speaks of the market value, or price, at which imported

merchandise is freely offered for sale to all purchasers. "The expression 'all purchasers' does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, *but it does mean all of those who cared to buy such goods in such markets.*" *United States* v. *American Glanzstoff Corp.*, 24 CCPA 35, T.D. 48308, at page 38 [emphasis added].

The construction which plaintiff argues for is not different in essence from the argument that was before the court of appeals in *Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773. In *Rico*, frozen strawberries were specially packed in 30-pound tins for the so-called institutional or manufacturing trades. Appellant argued, in the *Rico* case, that "where merchandise is so packed as to make it undesirable for a particular class of purchasers to seek to buy it, those purchasers are, in effect, precluded from that market." (*Rico, supra,* at p. 112.) Substituting size for packing, this is what plaintiff argues here.

What our appeals court said, in the *Rico* case, as to the argument there made relative to packing, would seem relevant in the context of plaintiff's argument as to size of the Italian market for the large carbons.

It may be true that retailers and individuals are not in the class of "those who care to buy" the big tins of strawberries, but there is no evidence to show that the manufacturer would refuse to sell to them. "Offered for sale" does not require active solicitation of customers, nor does it require that the goods be so packaged as to meet the needs of all customers. A restriction inherent in the packaging of the goods which results in only a certain class of customers desiring to purchase such goods is not a restriction upon offering for sale. It would seem that to defeat the conception of a free offering the restriction would be one involving some form of marketing practice resulting in the arbitrary exclusion from the market of certain customers or classes of customers by a refusal to sell to them on an equal footing with others, or at all. [*Rico, supra,* at p. 112.]

Plaintiff's proofs support, rather than deny, the existence of a foreign value for the large carbons. I find that foreign value is the proper basis for valuing those lighting carbons that are longer than 14 inches, or more than 9 millimeters in diameter, and that their export value is not higher.

As to those lighting carbons that are 14 inches or less in length, plaintiff concedes that foreign value is the correct basis for appraisement; but argues that the foreign value should be "list price," less a discount of 55 percent. The only "list price" in evidence is exhibit 7, which is a pricelist expressed in United States dollars. It is not shown that offerings in the Italian home market, for domestic consumption, were made in dollars, rather than in lira. Mr. Artoe testi-

fied that the dollar pricelist was prepared *for his use*. His concern is an American buyer, for export from Italy. There is no evidence that this list was circulated to the domestic trade in Italy. Therefore, this pricelist, also, has little or no evidentiary value, for the reason ably stated by the second division of the court on review in *United States* v. *North American Asbestos Corp.*, 44 Cust. Ct. 801, A.R.D. 123:

> We are of opinion that appellant's position on the subject of the evidentiary value of pricelists stems from a misconception of their true function in the chain of proof of statutory market value. The mere fact that pricelists are admissible in evidence by statutory authorization (28 U.S.C. § 2633) does not necessarily clothe them with probative force. Pricelists have weight not in establishing the *bona fides* of their *per se* quotations, but in reflecting that a seller is proffering his wares to the buying public. Foreign value is defined as the price at which merchandise is freely offered for sale to all purchasers, and pricelists constitute one of several methods of showing that offers of sale are in fact made. Consequently, if they are retained as private documents, and are never seen by any purchaser, it is difficult to understand how they can be considered evidence of a vendor's willingness to sell. We are in agreement with the trial court that the pricelists contained in plaintiff's collective exhibit 1 are without evidentiary value in this action. [P. 805.]

Plaintiff, on this record, has failed to sustain its burden of proof that the foreign value which it claims is the value at which those lighting carbons that are 14 inches or less in length should be appraised. Foreign values of such carbons are the presumptively correct appraised values.

On the record before me, I find as facts:

1. That the merchandise, subject of these appeals, consists of lighting carbons exported from Italy between July 1956 and September 1957.

2. That this merchandise was appraised on the basis of foreign value, under section 402(c) of the Tariff Act of 1930, as amended, in effect prior to the effective date of the Customs Simplification Act of 1956.

I conclude as matters of law:

1. That plaintiff has not overcome the presumption that foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended, is the basis for valuation of this merchandise.

2. That the record does not establish values for the merchandise in these appeals for reappraisement, other than the values as found by the appraiser.

3. That the foreign values of the merchandise are the respective appraised values, and there are no higher export values.

Judgment will be entered accordingly.