(Reap. Dec. 10626)

SALVADOR ROSA *v.* UNITED STATES

Entry No. 449, etc.

(Decided November 19, 1963)

*Jaime Pieras, Jr.,* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Daniel I. Auster, Murray Sklaroff,* and *Sheila N. Ziff,* trial attorneys), for the defendant.

LAWRENCE, Judge: Five appeals for a reappraisement (275500–A through 275504–A) have been consolidated for the purpose of trial. They relate to importations of 12-ounce tins of corned beef, packed 48 tins to a case, manufactured by Frigorifico Nacional of Montevideo, Uruguay, and entered at the port of San Juan, Puerto Rico.

The merchandise was appraised on the statutory basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended by the Customs Administrative Act of 1938, at the Uruguayan peso rate of 7.538 or 8.518 per dozen tins, net, packed.

Plaintiff contends that the merchandise should have been appraised

on the statutory basis of export value of such or similar merchandise, as defined in section 402(d) of said act (19 U.S.C. § 1402(d)), which is represented by the entered and invoiced values.

The statutory provisions pertinent here read as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The only witness in the case, Manuel Cuebas, vice president of Guillermo J. Kearney, Inc., for whose account the merchandise was imported, testified that in purchasing corned beef, such as that in controversy, his concern dealt directly with Frigorifico Nacional, and, when in need of supplies, it either cabled or wrote to that company seeking quotations, and upon receipt of information that the merchandise was available and prices quoted, the offer was either accepted or rejected. He stated that other firms in Puerto Rico were also importers of corned beef from Frigorifico Nacional.

Cuebas' testimony gave no light upon the presence or absence of a foreign or an export value. However, upon this phase of the case, plaintiff introduced an affidavit in which the affiant was Hugo J. Stagnaro, export chief of Frigorifico Nacional, Montevideo, Uruguay. This was received in evidence as plaintiff's exhibit 1. It was written in the Spanish language, and a translation thereof into English was received in evidence as plaintiff's exhibit 1–A.

An examination of the affidavit fails to establish the absence of a foreign market value for the subject merchandise, as the following extracts from the affidavit will disclose—

That during the years 1952 and 1953 [the dates of exportation herein], corned beef was not freely offered for sale to all purchasers in the principal markets of

Uruguay, nor was it sold for home consumption in the usual quantities in which sales for exportation at wholesale are made in the ordinary course of trade.

The reason given for that statement was that Uruguay is a great meat-producing country and generally consumes fresh meat rather than corned beef, which latter is produced for sale and consumption outside of Uruguay. However, the affidavit further reads—

Even though sales for home consumption were not in the usual wholesale quantities in which corned beef is sold for export, the prevailing price during years 1952–53 was the same for both export and home consumption. * * * When sales of corned beef were made during the years 1952–1953 directly to consumers or retailers in Uruguay, an additional service was given, namely the distribution and delivery to the different consumers and retailers, which raised the cost to 18% upon the price of such corned beef. * * *

With reference to the service charge, the affidavit states—

* * * The addition of 18% for distribution and delivery necessarily makes the price at which corned beef was sold in Uruguay higher than the price at wholesale for corned beef which was sold at wholesale for export.

It is obvious from the foregoing that canned corned beef was sold for home consumption in Uruguay. The deponent, in exhibit 1, was apparently of the opinion that, because the quantity sold in Uruguay for home consumption was small in comparison with the quantity sold for export, a foreign value within the meaning of the statute did not exist. This, however, is a conclusion by the deponent not supported by facts. The record is silent as to the usual quantity sold for home consumption in Uruguay.

It was incumbent on plaintiff to establish not only that the value found by the appraiser was erroneous, but it must also establish a proper export value.

Since the court is of the opinion that the evidence fails to establish the absence of a foreign value, it becomes unnecessary to decide whether or not there was an export value.

Upon the record presented, the court is constrained to hold that plaintiff has failed to overcome the presumption of correctness attaching to the action of the appraiser. Section 2633, 28 United States Code, provides in part:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

Accordingly, the value found by the appraiser is affirmed.

Judgment will be entered accordingly.