(R.D. 11321)

PEACOCK SALES CO., INC. v. UNITED STATES

Entry Nos. 0857; 0817.

(Decided June 23, 1967)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* and *Hadley S. King* of counsel) for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Samuel D. Spector* and *Glenn E. Harris*, trial attorneys), for the defendant.

OLIVER, Judge: These two appeals for reappraisement concern importations of various styles of cigarette lighters shipped from the Virgin Islands and entered at the port of San Juan, Puerto Rico, on December 26, 1957, and January 7, 1958, respectively. Both entry dates were prior to the effective date of the Customs Simplification Act of 1956. Appraisement was made at varying values per dozen, depending mainly on the style of lighter involved, on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930.

Under the somewhat unusual circumstances in this case, plaintiff claims that the proper dutiable values are the entered values, which in each instance are more than twice the amounts returned by the appraiser, and that the correct basis of appraisement is foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. Plaintiff's position in this proceeding, however, is subordinate to its fundamental claim respecting these imports, that is, that they are free of duty pursuant to the provisions of section 301a of the Tariff Act of 1930, as amended

(19 U.S.C., section 1301a), which provides in part for duty-free treatment of—

\* \* \* all articles the growth or product of any such possession, or manufactured or produced in any such possession from materials the growth, product, or manufacture of any such possession or of the United States, or of both, which do not contain foreign materials to the value of more than 50 per centum of their total value, coming into the United States directly from any such possession,\* \* \*.[1]

Section 301a also provides at the outset that articles coming into the United States from its insular possession (except Puerto Rico) are to be levied with duty as "upon like articles imported from foreign countries." However, I agree with the plaintiff herein that such questions as whether the instant merchandise was "manufactured" or "produced" within the meaning of the above-quoted language are not properly before this court. These appeals are before me for a determination of value only and since the appraiser has adopted the last alternative basis of value under the law, and further, since neither party has challenged the amounts contended for by each [2] (R. 78–80), the sole issue in controversy is whether a foreign value existed for this merchandise. *B.A. McKenzie & Co., Inc., et al.* v. *United States*, 47 CCPA 143, C.A.D. 748; *United States* v. *Nicholas Gal et al.*, 32 Cust. Ct. 657, A.R.D. 39.

The following tabulation, taken from "Appendix A" in defendant's brief, shows the imported stock or style number of each lighter and its appraised and entered or claimed value:

| Style No. | Appraised value (per doz.) | Entered value (per doz.) |
| --- | --- | --- |
| 1182 | $2. 15 | $5. 50 |
| 1199 | 2. 12 | 7. 00 |
| | [3. 0889] | |
| 1253 | 2. 50 | 6. 00 |
| 1277 | 2. 12 | 5. 00 |
| 1277/B | 2. 15 | 5. 00 |
| 1279/B | 4. 09 | 10. 00 |
| 1282 | 2. 07 | 5. 00 |
| 1283 | 2. 01 | 5. 00 |
| 1286/B | 2. 70 | 6. 50 |
| 4779/B | 2. 04 | 5. 00 |
| | [2. 03] | |
| 4831 | 2. 04 | 7. 00 |
| 4968 | 2. 09 | 6. 00 |
| | [2. 12] | |
| 4968/B | 2. 12 | 6. 00 |
| 4997/B | 2. 50 | 7. 00 |
| 5105/B | 2. 48 | 6. 00 |

[1] Repealed as of August 31, 1963, and now embodied in section 1202 of the Revised Tariff Schedules.

[2] Plaintiff expressly conceded that if cost of production is the proper basis of appraisement, the appraised values are correct.

The figures in brackets represent the appraised values used in entry 0817 of December 26, 1957. The letter "B" appearing after several of the stock numbers is referred to on the invoices as denoting "One Dozen To A Box."

The foreign value section under which plaintiff claims provides:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

At the commencement of the trial, the plaintiff introduced three collective exhibits into evidence. An affidavit of John S. Bensen forms part of exhibit 1. So far as pertinent to this litigation Mr. Bensen states therein that he was resident manager of the V. I. Jewelry Manufacturing Company, St. Thomas, Virgin Islands (hereinafter referred to as V. I. Jewelry and also as manufacturer,[3] seller, and shipper of the imported cigarette lighters), from approximately June 1957 to June or July 1960; that one of his responsibilities as resident manager was the supervision of local sales of merchandise manufactured by V. I. Jewelry and, in this connection, he examined invoices of the company (attached as part of exhibit 1 is a schedule of sales made locally by him or under his direction and supervision during his term of employment) ; that the prices and terms of such sales were the same as those regularly advertised in three local newspapers as well as those appearing on pricelists regularly mailed to a large number of firms and individuals resident in the Virgin Islands (these lists are also attached as part of exhibit 1 and marked B–1 through B–13) ; that anyone desiring to purchase these articles in the Virgin Islands could do so under the terms of sale as offered and advertised and that no restrictions were placed upon the use or disposition of the merchandise.

The schedule of sales in plaintiff's collective exhibit 1, which Bensen stated was reflective of invoices prepared by him personally or under his direct supervision as part of his regular course of business, covers a total of 37 sales from the middle of June 1957 to the end of May 1958. The style number, the date, the quantity, the purchaser, and the purchaser's address are also indicated on this schedule. Individual purchases varied in makeup from one style up to nine different styles.

---

[3] Any reference herein to V. I. Jewelry as "manufacturer" of the imported goods is in no sense meant to reflect a determination that these goods were "manufactured" or "produced" within the meaning of those terms in section 301a of the act, *supra*.

Exhibits marked B–1 through B–13 attached to collective exhibit 1 contain mimeographed pricelists which also indicate the style number and description of the various lighters being offered. There are several lists, the earliest dated August 1, 1957, and the latest April 15, 1959. The cover sheets of each pricelist show, *inter alia*, the manufacturer's name and address and that the lighters are being offered to the entire trade. The following information also appears thereon: "TERMS: F.O.B. ST. THOMAS—NET 10 E.O.M.[4] PACKING INCLUDED—NO ANTICIPATION ALLOWED—ADDITIONAL PRICE LISTS SENT ON REQUEST—PRICES APPLY TO ALL QUANTITIES—NO DISCOUNTS ALLOWED."

The affidavit of Arthur B. Carlsen, identified as resident manager of V. I. Jewelry from the autumn of 1953 to the spring of 1957, appears in plaintiff's collective exhibit 2. The information contained therein respecting his duties and the offering and selling of the instant merchandise is similar in all essentials as that given by the affiant Bensen. A list of what appears to be 20 sales to local individuals or firms from June 1956 to December of that year is attached as schedule A.

Collective exhibit 3 contains the affidavit of Eleanor M. (Edwards) Mahoney, resident manager of V. I. Jewelry from November 1952 to the autumn of 1953. Her story parallels that of the two previous affiants but local sales during her employment were limited to items of jewelry.

Mr. Jerry M. Simon was called to testify on behalf of the plaintiff and stated that during 1957 and 1958 he was associated with the following firms: The International Glass Company (hereinafter referred to as "International"), the Peacock Sales Company (hereinafter referred to as "Peacock"), and V. I. Jewelry. He testified that all three companies were owned by the same individual and that he (Jerry Simon) had managerial and supervisory duties in each firm, although his salary was paid by International.

The witness testified that he had become familiar with the merchandise involved in these appeals by having personally handled them and also by seeing the invoices. In the years 1957 and 1958, he spent a total of 15 to 20 weeks per year in the Virgin Islands at which times he both made and directed local sales of this merchandise. He stated that the lighters were offered or sold by way of ads placed in local newspapers, by offers made through a mailing list, and by a salesman who contacted various shops on the Islands. He identified plaintiff's exhibit 4 as a series of pricelists, the earliest dated August 1, 1956, and the latest December 15, 1957, which were sent through the mail to residents of the Virgin Islands, and plaintiff's exhibit 5 as the

---

[4] Identified as a commercial abbreviation, meaning payment expected at the net prices within 10 days from the end of the month in which the bill is submitted.

mailing list used. Many of the pricelists in exhibit 4 are the same as those attached to exhibit 1. Exhibit 5, representing a list taken from the phone book in St. Thomas, was marked by the witness with an "X" in front of various entries thereon to indicate only those firms that would normally carry cigarette lighters, and it was admitted as so marked. The listings marked, totaling 49, include firms that did not actually buy any lighters as well as those that did. He admitted that most of the shops indicated sell mostly to tourists, although several are known as local trade establishments. The so-called tourist trade shops, however, do not restrict their sales and deal indiscriminately with all purchasers, native or tourist.

Mr. Simon further testified that a Mr. Bernard Frankel (subsequently identified as controlling stockholder in the three firms mentioned by Simon, *supra*) and he fixed or set the prices for these lighters in the Islands and that the unit of quantity used was 1 dozen. They took into account what was the best price they could receive as well as what comparable lighters sold for in the United States. They also considered prices of other lighters selling on the Islands.

It was his experience that purchasers who bought for resale, such as stores and shops, purchased in quantities of ½ dozen and up but that in no case did the price vary because of the quantities purchased. The sales price followed the published pricelists and no restrictions were imposed as to disposition on resale. Plaintiff's exhibit 6, consisting of publications of three local newspapers, The Daily News, The West End News, and The Home Journal, and containing advertisements of V. I. Jewelry offering these lighters in the same general terms of the pricelists as described, *supra*, was admitted in evidence. The particular editions cover a period from January through December of 1957.

Finally, plaintiff introduced collective exhibit 7 which contains a series of invoices that the witness stated were prepared in the ordinary course of business and which cover 1957 sales of cigarette lighters in the Islands. A number of such sales also cover the specific styles contained on the entries in this case. Mr. Simon was able to identify some of the purchasers but was unable to say whether or not others may have been tourists who purchased the lighters to take back to the States.

On cross-examination, Mr. Simon identified four shops to which he had personally sold lighters, which sales are a part of exhibit 7. He stated that during 1957 he made approximately seven to eight trips to the Virgin Islands, each trip about 2 weeks in duration.

The witness was unable to state the total sales figures respecting lighters sold in the Islands or those sold by V. I. Jewelry to Peacock. Questioned about the business activities of V. I. Jewelry, he answered substantially as follows: That the parts for these lighters are im-

ported into the Virgin Islands from Japan in cases containing 100 dozen or more; that the lighters are assembled in the Islands by home workers; that V. I. Jewelry paid home workers about $9 per case of 100 dozen lighters in 1957 and that local transportation costs and inspection costs also were involved. V. I. Jewelry was the only factory manufacturing or processing cigarette lighters in the Virgin Islands, although other lighters were sold there.

At this juncture, plaintiff rested and the Government called Mr Arthur B. Carlsen, the affiant of plaintiff's collective exhibit 2 and resident manager of V. I. Jewelry from 1953 to the spring of 1957. Carlsen testified that he was hired by Mr. Jerry Simon and was directly responsible to him; that his duties included the supervision of production, office work, shipping, and "matters pertaining to that operation" but that soon after being engaged he was further instructed to make local sales of the merchandise; that he was familiar with the pricelists contained in exhibit 4 and that they had come to him from International in New York; that he was instructed to mail them and follow them in selling, but he could not recall whether the dates of mailing were the same as the dates appearing on the lists. During his tenure as manager he had a secretary but no salesman in his office, and most of his time was spent with production matters leaving little time for actual selling. However, he did offer locally each style produced and, in going around to local shops, he normally carried a variety of samples.

Testifying with respect to the list of local sales attached to exhibit 2, Mr. Carlsen stated he could not recall if he had made all of them, but he did remember making a number of them. He had become familiar with the businesses along the main street in St. Thomas and identified Bolero, A. H. Riise, The Carib Shop, Vinegas, and Cavanaugh's, Inc., as gift shops selling principally to tourist trade, while the Petite Parisienne, The Art Shop, and Oscar's dealt mostly with natives or residents of the Islands. He was unable to recall who or what Dolan's was, but he identified V. I. Vacations, Inc., as a real estate corporation, Tropical Motors as a large auto-rental establishment, and St. Thomas Auto as a spare parts store. He could not say if any of these dealt in cigarette lighters as a regular course of business.

Concerning shops that dealt in lighters but did not appear as purchasers on exhibit 2, Carlsen named the Continental Shop, Lockart's, Sparky's and the Pepperment Stick. As to individual purchasers appearing in exhibit 2, he could not recall most of them but acknowledged that they could have been tourists staying at the local hotels.

On cross-examination, the witness stated that the initials "ABC" appearing on some of the exhibit 7 invoices were his and meant that he had seen and checked the invoices.

On redirect, he further stated that, wherever his initials appeared, he had written the word "paid" and noted that a deposit had been made to a local bank.

The rest of the evidence offered by the defendant is in documentary form, exhibits A, B, C, D, E, and K, being reports of customs agents or officials.

Defendant's collective exhibit A is a rather extensive report by B. F. Murphy, Jr., Customs Agent in Charge at San Juan, Puerto Rico, dated August 30, 1957. Investigation was made to determine the landed cost of foreign materials used in the finished lighters and to ascertain the proper basis of appraisement. At Charlotte Amalie, St. Thomas, Virgin Islands, the location of V. I. Jewelry, Murphy interviewed Messrs. Simon and Frankel. Under a heading "Export Value" the following pertinent information is set forth: V. I. Jewelry was incorporated under the laws of the Virgin Islands in May 1952 and Peacock Sales, Inc., has the exclusive right to import its merchandise; monies paid by Peacock to V. I. Jewelry do not correspond to shipments of merchandise and are in lump-sum checks; the merchandise is assembled by hand by home workers in St. Thomas and consists entirely of foreign components or parts.

Under a section dealing with "Foreign Value," most of the information contained, including attached pricelists and lists of sales, corresponds with that already in the record as introduced through plaintiff's evidence. The report states that the prices charged were reflective of the pricelists promulgated and that, according to Mr. Simon, prices were the same until August 1957 when they were reduced. Under the heading "Such or Similar Merchandise" the report concludes that similar merchandise is not sold for home consumption and that there were no other manufacturers of lighters in the Islands during the period covered (May 1956 through July 1957).

Charlotte Amalie, St. Thomas, is identified as the principal market for the sale of this merchandise, additional charges for mailing or shipping being added on sales to St. Croix or St. John. The merchandise is packed in cartons of ½ dozen or 1 dozen and these are the same cartons in which the lighter parts arrived from abroad. When sold or exported to the United States, the cartons are repacked into the original wooden cases in which they were imported.

The report further indicates that a total of 40 sales for home consumption were found, dating from June 1956 to July 1957. These sales were further identified as follows:

24 sales — to local retail stores and shops
5 " — to individual residents
8 " — to tourists
1 " — unverified
2 " — on consignment to Airport Coffee Shop

In some instances, the report states, payment had not yet been made and in other instances payment was verified by cancelled checks or other proof.

In dealing with the components of landed costs of the foreign materials in the Virgin Islands and as stated on entry, the report indicates that they were able to be verified and are shown in attached calculation sheets marked exhibit I.

Defendant's collective exhibit K is a report by this same agent, dated December 12, 1962, and contains a tabulation of the "40 sales" mentioned in his first report and deals with the verification of payment of those sales. The report states that verification was attempted solely by inquiry of the purchaser since the information was unobtainable from V. I. Jewelry. Payment in 13 of the transactions was verified, although 7 of these payments were months overdue. In several instances no record of payment was found at the purchaser's place of business. As to the remaining, comprising either firms or individual tourists or residents, the purchaser could not be located.

Collective exhibit B is a report dated January 21, 1958, and prepared by John H. Moseley, Acting Collector of Customs, in St. Thomas. It covers much the same ground as exhibit A but for the following information: From July 18, 1957, to December 31, 1957, an additional 17 sales for home consumption were made by V. I. Jewelry; from June 1956 to December 1957 a total of $1,190.90 worth of lighters (137 dozen) were sold locally while during the same period $2,570,000 worth of lighters (345,000 dozen) were exported to Peacock Sales, Inc. The report also states, in contradistinction to the information revealed in exhibit K, *supra*, that the records of V. I. Jewelry and its accountant, Mr. Hein Christensen, were examined and disclosed total payments for local sales in the amount of $911.16. Payment had not been received on two sales to Hays Enterprises, Inc. (Pilgrim's Terrace) or on a sale to Gale Johnson's Personal Shopping Service. A Mrs. Hays was described as manager of V. I. Jewelry at the time of the sales to Hays Enterprises, Inc., June and July of 1957.

Collective exhibits D and E, although specifically introduced into evidence, are not relied upon by the defendant in its brief. They deal completely with the corporate and/or business relationships of various companies involved with the importation and sale of these lighters in the United States, presenting information beyond the scope of this litigation.

Defendant's collective exhibit C is a report of Mr. Ernest W. Fitzpatrick, agent in charge at Charlotte Amalie, St. Thomas, and it is dated March 22, 1963. It represents supplemental information respecting the 17 local sales listed in exhibit B. Most of the establish-

ments contacted had either changed ownership and, therefore, information was not available, or they were out of business and unknown to present local firms. Mr. Donald Stamford, owner of the Airport Shop, recalled the purchase of the lighters. In his affidavit attached to this exhibit he states that his firm sells various types of merchandise generally to tourists or at an estimated ratio of 75 percent to tourist trade and 25 percent to local residents. In August and September of 1957, he purchased 14 dozen lighters from V. I. Jewelry and offered them for resale in his shop. Another firm that was contacted indicated that the lighters were purchased to give away as gifts to friends of the store and the owner of Gave Hus, Inc., a gift shop, is said to have purchased them as sort of an "accommodation" for John Bensen.

An affidavit of Virginia M. Alden, owner of Pets Fancy Gift Shop of St. Thomas, was also attached to this exhibit. In it she states that she is engaged in selling a variety of articles to both tourists and local residents; that the articles she sells are imported from other countries; that on or about December 16, 1957, she bought 1 dozen cigarette lighters from an employee of V. I. Jewelry and that the lighters were sold in her shop to any customer who wished to purchase them.

Defendant's exhibits F, G, H, and I are affidavits executed by owners (in one instance the secretary-treasurer) of local retail shops in St. Thomas. In substance, they state that they ordinarily sell imported articles; that the bulk of their business transactions is with tourists; that they bought anywhere from 2 to 5 dozen lighters from V. I. Jewelry in 1956 and 1957; and that the lighters were offered for sale to their customers. In addition, the affidavit of Mr. Ben E. Bayne of Bolero, Inc. (exhibit I), states that during this period he also purchased Zippo cigarette lighters for approximately $2 each or more; that the V. I. Jewelry lighters were considerably cheaper in construction than the others he handled; and that he purchased them out of friendship for Messrs. Carlsen, Simon, and Bensen.

Defendant's exhibit J is the affidavit, dated January 30, 1964, of one Helen Goeggel who states that, since October 1959, she has been executive secretary of the Virgin Islands Gift and Fashion Shop Association. She further avers that she was personally familiar "with all or practically all" merchandising establishments in Charlotte Amalie in 1956 and 1957. She swears to having no knowledge of the following firms appearing as purchasers of V. I. Jewelry lighters: Dolan, Inc., Raven Hall Shop, James Robertson & Co., S. P. Diaz & Co., Hays Enterprises, Inc., and Gail Johnson's Personal Shopping Service.

At the completion of defendant's case, the plaintiff called John Bensen, the affiant in plaintiff's exhibit 1, to testify on rebuttal. He explained that he had moved to the Islands in 1954 and had worked

at Cavanaugh's Gift Shop and at a wholesale/retail food store before coming to V. I. Jewelry in 1957. He affirmed his familiarity with local businesses in or about the Islands and he identified the Raven Hall Shop as a novelty store located at the airport in St. Thomas; James Robertson & Company as a large land-owning firm in St. Thomas; S. P. Diaz as a small shop in St. Croix; Hays Enterprises, Inc., as owner of a bar-restaurant in St. Thomas called "Pilgrim's Terrace"; and Gail Johnson's Personal Shopping Service as a business in St. Thomas that filled orders for sales to and from the United States.

Upon completion of the examination of this witness, the case was submitted and both parties filed briefs. In its brief, the defendant pointed out that there was a lack of evidence respecting costs incurred in placing the merchandise in condition for shipment to the United States. Whereupon, and before any decision was entered, plaintiff moved and the court ordered that the case be restored to the calendar for the sole purpose of taking testimony regarding export packing expenses. This case, for the limited purpose contained in the restoration order, came on for hearing before me last year. At that time, plaintiff introduced into evidence as exhibit 8 the affidavit of Junichi Shidara who stated therein that during 1957 and subsequent years he was associated with the firm of Towei Boeki Company of Tokyo, Japan. He identified the Towei Boeki Company as purchasing agent and shipper of cigarette lighters and parts for Continental Merchandise Co., Inc., of New York City.[5] He further stated that he was familiar with the production of said lighter parts, including the export packing on shipments to the United States, and that the cost of the outer, wooden cases in which the parts were shipped was 350 yen per case, and this figure did not change during all of 1957.

Mr. Jerry Simon, who previously testified for the plaintiff, was recalled. He identified plantiff's exhibits 9, 10, and 11 as inventory control cards kept under his direct supervision at the Peacock offices in New York. The official papers in both entries under appeal were specifically received into evidence. Mr. Simon indicated that a lot number appearing to the left of the style or stock number of each lighter appearing on the invoices corresponded to a similar number entered on the control cards and was used to identify the particular lighter with the parts that came from Japan. The supplier of the parts from Japan is also recorded for each lot number received. Towei Boeki Company was identified by the witness as the principal supplier of parts but five other firms were also shown to be suppliers on different shipments.

---

[5] This firm had been previously mentioned in defendant's exhibits C and E as the initial purchaser of these lighter parts from Japan that sold or transferred them to International.

From personal observation and supervision of the packing operation in the Virgin Islands and from supervision over the making of the payroll, Simon testified to the following: That the same wooden cases in which the parts arrived from Japan were used in packing and shipping the lighters to the United States (100 dozen per case) ; that an individual worker could pack 10 cases per hour at a wage of 65 cents per hour; and that they used two straps per case costing 5 cents each.

On cross-examination, Mr. Simon testified that he did not know the actual manufacturer of the lighter parts in Japan or who packed them or whether the Towei Boeki Company constructed the wooden cases or purchased them. He stated that there were, of course, ocean freight and insurance charges from Japan to the Islands and that freight charges are computed by either weight or measurement, but he did not know on what basis these shipments were charged.

With respect to the packing costs on the Islands, the witness explained further on cross-examination that one worker nailed, strapped, and marked 10 cases per hour but a separate one actually packed the cases at the rate of about 15 per hour. He also stated that the 5 cent strapping cost included the time it took the worker to put it on the case. All immediate cartons for holding the lighters within the outer cases were the same cartons used to import the parts from Japan, and they were included in sales for home consumption in the Islands.

Although he asserted his personal familiarity with the various costs involved, Simon acknowledged that a bookkeeper had kept an account of expenses and that he had made no effort to locate any expense records before appearing in court.

As the party challenging the values found by the appraiser, it is plaintiff's burden to not only show that those values are erroneous but it must also establish some other dutiable values as the proper ones. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. As mentioned at the outset, the appraiser adopted the last alternative basis of appraisement for this merchandise. Consequently, if plaintiff establishes proper foreign values, its two-fold burden will have been met. However, in claiming foreign value as the proper basis for appraisement, it is incumbent upon it (plaintiff) to satisfy every element required to make a valid appraisement. *Brooks Paper Company, supra.*

Although plaintiff has the burden of proof with respect to the statutory elements of foreign value, several of these elements appear not to be in serious dispute. Thus, evidence introduced by both parties establishes that the prices at which these lighters were offered and sold in the Virgin Islands were based upon a unit quantity of 1 dozen and that such prices never varied with the quantity offered or sold. Under

such circumstances, further consideration of the statutory term "usual wholesale quantities" is unnecessary. *Jenkins Bros.* v. *United States*, 25 CCPA 90, T.D. 49093. There is likewise an uncontradicted showing that Charlotte Amalie, St. Thomas, is the principal market in which the lighters are sold and offered for sale and that such sales and offers of sale are not restricted to any class of purchaser, to any percentage of purchasers, or to any designated territory of purchase. *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 CCPA 1, C.A.D. 115; *United States* v. *Heemsoth-Kerner Corp.*, 31 CCPA 75, C.A.D. 252.

It also appears that the merchandise was sold and offered for sale without restriction as to disposition or use and, therefore, on a freely offered basis. However, the Government has argued that evidence indicating that the offered prices were imposed upon the Virgin Islands manufacturer from without affects their status as "freely offered prices," citing *United States* v. *Graham & Zenger, Inc.*, 31 CCPA 131, C.A.D. 262, as precedent under a "comparable" situation. In the *Graham* case, the Belgian Government directly supervised the setting of minimum prices at which Belgian manufacturers had to sell their products for home consumption with the additional qualification that merchandise sold for home consumption could not thereafter be exported. The court held that the setting of minimum prices was not itself a restriction negativing free offerings under the foreign value statute but that the restraint imposed upon the free use of the goods after sale did constitute such a restriction, observing that—

* * * generally speaking they [cases cited by trial judge] all lay down the principle that a foreign market is controlled when restrictions are imposed on the resale, free use, dominion over the merchandise, or confining sales to selected purchasers.

The situation existing in the *Graham* case, *supra*, is not at all comparable to that before me here. The restriction nullifying a free market in that case involved a limitation on the use of the merchandise subsequent to purchase and not the setting of prices. In the instant case, the lighters were offered to merchant and consumer alike without limitation as to resale or use. To my mind, the fact that the pricing policies of one of three closely held family corporations (cf. defendant's exhibit D) are dictated by the principal stockholder, in conjunction with his roving manager (Mr. Simon), is immaterial to the question of the existence of a free market in the Virgin Islands. It also appears, however, that Mr. Frankel is president of at least one of his firms (cf. also defendant's exhibit D).

While much of the evidence introduced by the defendant delineated between sales to tourists and sales to residents, as well as between sales

to shops that sell to tourists and those dealing primarily with natives, it has made no formal argument or cited any authority that would support the proposition that the cigarette lighters were not offered and sold for home consumption. Certainly those lighters offered and sold to local business establishments, as well as to residents of the Islands, were for home consumption. Furthermore, direct sales to tourists visiting in the Islands, who were free to use or not to use the merchandise as they saw fit, would also appear to qualify in determining foreign value. The statute speaks of merchandise that is "freely offered for sale for home consumption" and not that it be necessarily consumed in the home market. Of course, if it appeared that the merchandise was made available to the tourist only as he was departing the Islands, then a different conclusion might follow.

The term "ordinary course of trade," appearing in section 402(c) of the statute, relates to those selling methods and conditions of sale which are representative for manufacturers of such or similar merchandise in the foreign market. *United States* v. *International Forwarding Co., Inc., et al.*, 27 CCPA 21, C.A.D. 56. However, where there are no other manufacturers of such or similar merchandise or where the parties have proceeded in a manner inconsistent with the existence of other relevant trade practices in the market, then the sales practices of the manufacturer or seller under consideration are deemed to be in the ordinary course of trade. *American Shipping Co. et al.* v. *United States*, 29 CCPA 250, C.A.D. 198; *Stone & Downer Co. et al.* v. *United States*, 21 CCPA 479, T.D. 46958. Thus, in the instant controversy, evidence received from both sides corroborates the contention of the plaintiff that there were no other manufacturers or processors of cigarette lighters in the Virgin Islands during the period under consideration. The treasury report contained in defendant's exhibit A concludes that no similar merchandise was sold in the Islands. Though there is evidence that other lighters were carried by retail shops in St. Thomas, they appear to have been imported directly from abroad.

Counsel for the Government argues, as it did with respect to the question of the existence of a free market, *supra*, that the type of "outside" control present in the establishment of V. I. Jewelry's pricing policies is not that ordinarily conducted by corporate businesses. In the first instance, I find the question as to the nature and amount of control existing between V. I. Jewelry and its corporate affiliates in the United States somewhat removed from a consideration of the normalcy of the business practices of that firm vis-à-vis its trade conducted in the Islands. More importantly, I find no reason to agree with counsel's blank assertion that the exercise of such corporate control,

especially where the related firms are closely held family businesses, is outside the sphere of what may be called "ordinary" practice.

Despite the apparent existence of the elements of foreign value as discussed above, the Government stresses the following two arguments: (1) that the sporadic nature of the sales of these lighters in the Virgin Islands is demonstrably incapable of evidencing a foreign market, and (2) that the offers of sale were not *bona fide* but were made for the sole purpose of establishing the outward appearance of free offerings in order to obtain favorable duty treatment on imports into the United States.

As an intermediate or subordinate argument, the defendant contends that the evidence indicates that most of the lighter styles appearing on the invoices covered by the instant appeals were not the subject of sales in the Islands and that others were not even offered for sale as claimed by plaintiff. These contentions, however, stem from a misconception of what the addition of the letter "B" signifies on some of the invoiced items. As indicated on the invoices themselves and as testified to by plaintiff's witness Simon (R. 153), the addition of this letter after the style number merely refers to a packing differential and does not otherwise represent a different item. Therefore, of the 13 types of lighters imported, there is evidence of sales in the Virgin Islands of 8 of those types prior to the dates of importation, and of a 9th soon following those dates. Furthermore, an examination of plaintiff's exhibits 1, 4, and 6 indicates that each imported lighter style was in fact included on the lists of offers to sell and at the prices at which each was entered.

The recorded sales contained in plaintiff's exhibits 1, 2, and 7, mostly cover a period dating from mid-1956 up to the beginning of 1958. They represent a total of some 137 dozen lighters (about 50 sales), while over a comparable period 345,000 dozen lighters were shipped by V. I. Jewelry to the United States. To support its position as to the sporadic nature of such home market sales, defendant relies upon the authority of *Tom Jamison* v. *United States*, 42 Cust. Ct. 429, Reap. Dec. 9280. In that case, the evidence indicated that a manufacturer of riding saddles in Mexico regularly offered and sold his merchandise to all purchasers at a price based upon a purchase of 10 or more saddles. The case was before the trial judge on remand (*United States* v. *Tom Jamison*, 31 Cust. Ct. 468, A.R.D. 32), and the trial court adopted the finding of the appellate division that occasional sales to tourists at higher prices were sporadic dealings for this manufacturer and did not fall within the usual wholesale quantities in which the merchandise was regularly sold or offered.

I do not consider the situation before me here analogous to that in the *Jamison* case, *supra*. In the first instance, there is no issue as to what constitutes the usual wholesale quantity as all sales were made at or based on one quantity price. Secondly, in the *Jamison* case, sales to tourists were designated sporadic in relation to the manufacturer's other sales in the same market. In the instant case, the documented sales represent the sole course of the manufacturer's dealings, and they are more or less constant throughout the period. Though they are very small in quantity in relation to shipments to the United States, this disproportion appears to be no greater than the disproportion between the potential of the two markets.[6] Whether it is due to home market size or home market preference, the mere fact that home market sales may be significantly smaller than those in the export market is not in itself a basis on which to negate the existence of a foreign market value. *Salvador Rosa* v. *United States*, 51 Cust. Ct. 465, Reap. Dec. 10626; *An-Lee, Inc.* v. *United States*, 55 Cust. Ct. 635, Reap. Dec. 11093; *Rancho La Zacatosa* v. *United States*, 42 Cust. Ct. 620, Reap. Dec. 9413.

Of course, under section 402(c) of the tariff act, as amended, *supra*, foreign value is predicated upon the freely offered price and plaintiff argues that this does not require the existence of actual sales, citing *United States* v. *American Agar & Chemical Co.*, 34 Cust. Ct. 553, A.R.D. 59. (Appeal dismissed 42 CCPA 244.) It was held in that case that *bona fide* offers for sale, when made in accordance with the conditions of the statute, are alone sufficient to establish a foreign market value though no sales were negotiated and no demand or desiring purchasers were shown to exist. I dissented from this view and adhered to my opinion in *United States* v. *American Agar & Chemical Co.*, 30 Cust. Ct. 607, A.R.D. 19, wherein it was said that there must be the existence of a market, actual or at least reasonably potential, and not merely a willingness to sell, in order to show a statutory foreign value for merchandise.

Although I continue to adhere to this view, I am of the opinion that the authorities cited in both the majority and dissenting opinions in the second *American Agar* case, *supra*, have application to the offerings made in this case where not only actual sales have been shown but also the existence of a ready and potential market of retail shops, visiting tourists, and local residents. Under these circumstances, free offerings, if otherwise within the conditions of the statute, may be resorted to in determining the existence of foreign market value. *American Shipping Co.* v. *United States*, *supra*; *T. W. Holt & Co.* v. *United States*, 20 Cust. Ct. 367, 371, Reap. Dec. 7523.

---

[6] 1960 population census (1966 ed. of the World Almanac).

The defendant urges that there is a lack of competent evidence as to whether the pricelist offerings were ever adequately distributed to the trade, at least with respect to when they were distributed. I cannot subscribe to this. The affidavits of both Carlsen and Bensen (exhibits 1 and 2), resident managers of V. I. Jewelry during the period covered by the evidence, state that such lists were regularly sent out to local firms and individuals. Plaintiff's exhibit 6 contains published advertisements of these same pricelists in daily, tri-weekly, and weekly newspapers. More importantly, the recorded sales reflect the quotations on the pricelists tending to establish their effectiveness. *White Lamb Finlay, Inc.* v. *United States*, 29 CCPA 199, C.A.D. 192; *The Thrifty Equipment Co. et al.* v. *United States*, 52 Cust. Ct. 431, 435, Reap Dec. 10674.

On the question of when the pricelists were distributed, Carlsen testified that the dates of distribution were not necessarily the dates marked on each list. This testimony is corroborated by the statement attributed to plaintiff's witness Simon (defendant's exhibit A) that the price reduction lists were to be effective August 1, 1957, though earlier dates are marked upon several of them. Again, distribution of these lists after that date is also corroborated by sales and newspaper advertisements subsequent to the aforementioned distribution date.

What is perhaps the nub of the defendant's position in this case is that the offers to sell these lighters in the Virgin Islands were made for the purpose of obtaining duty free status on shipments of the same merchandise to the United States. As such, the Government argues, they are in the nature of self-serving statements, not surrounded by the *bona fides* necessary to give rise to a statutory foreign value.

Before dealing with this fundamental position, it is important to state that I find the evidence in this case, especially that introduced on behalf of the defendant, insufficient to establish any other grounds for finding the home market offerings to be illusory, sham, or otherwise non-*bona fide*. While aware of the divergence between the landed costs of the parts and the home market prices (which home market prices amount to about 40 or 50 cents per lighter for most of the imports under these appeals), there is no indication that the prices charged for these lighters were disproportionate or prohibitive to their marketability or that a reasonable quantity was not on hand to satisfy any local demand. Testimony by Mr. Simon that the prices were geared to comparable items selling in the United States is unassailed. Evidence of an "accommodation" sale, attributed to a local purchaser in defendant's exhibit C, pales by comparison to the numerous affidavits of retail purchasers testifying that the lighters

were acquired for resale in their places of business. The methodical and continuing efforts made to publicly and privately offer this merchandise, as well as the periodic instances of personal solicitation, appear to me to more than satisfy a finding that these lighters were "offered for sale" within the judicially construed meaning of that statutory term. *Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773.

It is impossible to review the evidence in this case without agreeing with defendant's assertion that the prime motivation behind the home market offerings of this merchandise appears to have been a hoped-for preferential duty treatment on shipments coming into the United States. As a matter of fact, a statement attributed to Mr. Jerry Simon at page 9 of defendant's exhibit A, not further explained or denied during trial, tends to corroborate the existence of that motivation. The question remains, however, does a motivation of this nature, whether directly or inferentially shown, operate to undermine an otherwise *prima facie* establishment of foreign value?

I am of the opinion that it does not so operate. It has been aptly observed:

Market value has been defined as the price at which the manufacturer holds his merchandise for sale, the price at which he freely offers it in the market, and the price which he is willing to receive, and the purchasers are willing to pay, in the ordinary course of trade. [*United States* v. *Alfred Kohlberg, Inc.*, 2 Cust. Ct. 849, 852–853, Reap. Dec. 4526, affirmed *Same* v. *Same*, 27 CCPA 223, C.A.D. 88.]

The evidence before me supports a finding that the manufacturer was willing to sell and purchasers were willing to buy in the market under consideration. That such willingness on the manufacturer's part stems from considerations subsisting in a *different* market is immaterial. Congress has never seen fit to expressly incorporate motivation as an ingredient in the value statute.

Moreover, the existence of duty-oriented manipulations of foreign markets *within* the conditions of "existing law" was a fact of customs reality laid before and recognized by Congress during its deliberations over the elimination of foreign value as a basis of valuation under section 2 of H.R. 6040, enacted as the Customs Simplification Act of 1956. Cf. House Report No. 858, 84th Congress, 1st session, June 18, 1955, pages 4–5; Hearings Before the Committee on Finance, United States Senate, 84th Congress, 2d session, June 25, 26, and 27, 1956, pages 28–29. It has long been recognized that a manufacturer has the right to prepare his merchandise for the express purpose of exposing it to the lowest duties possible. *Merritt* v. *Welsh*, 104 U.S. 694, 26 L. ed. 896; *Michaelian & Kohlberg, Inc.* v. *United States*, 22 CCPA 551, T.D. 47554. I find no reason to curtail that right as it ap-

plies to valuation determinations so long as it appears, as it does here, that the statutory elements of the "existing law" have been compiled with.

To fully comply with those elements of statutory value, it was also plaintiff's burden to show what, if any, packing costs were involved in preparing this merchandise for shipment to the United States.

To establish these costs, plaintiff relies upon the affidavit of Junichi Shidara (plaintiff's exhibit 8), an associate in the Japanese supplying firm of Towei Boeki, who indicated that the outer wooden cases, in which cartons holding a dozen or less lighters were packed in shipments to this country, cost 350 yen (converted at the published rate to $0.972692) throughout 1957. Figuring an additional 10 cents for the cost of straps used and another 11 cents for labor charges based upon Mr. Simon's testimony that it takes one worker an hour to pack 15 cases and another an hour to nail and strap 10 cases, plaintiff contends that the evidence supports a finding on this issue of $0.012 per dozen (rounded off) for packing costs.

The defendant initially challenges the cost figure for the wooden cases stating, *inter alia*, that it represents a cost to the wrong person in the wrong place. The correct cost, defendant argues, is the one incurred by V. I. Jewelry in the Virgin Islands, and this should include a proportionate charge for transportation and insurance in moving the cases from Japan to St. Thomas.

I find myself unable to agree with the contention of either party on the proper addition of costs for the outer wooden cases. The evidence indicates that the purchase price of the lighter parts from Japan included the cost of all packing, both inner cartons and outer cases and that the landed costs in the Virgin Islands were likewise expressed as charges added to the total cost of the lighter parts. (Cf. page 12 of defendant's exhibit A.) The evidence also establishes that the same wooden cases in which the parts are purchased from Japan are reused on shipments by V. I. Jewelry to the United States. Therefore, it seems to me that the cost of these cases forms an integral part of the cost of the lighter parts as they are received by V. I. Jewelry and where, as here, the market price is above the cost of components, those costs are included or reflected in that price.

While it is true that these wooden cases did not physically accompany sales in the home market, I do not find that condition necessitated by the statute. It is the *cost* of packing used that must be included or reflected in a finding of foreign value and not necessarily the packing itself. By the same token, though V. I. Jewelry may not charge for packing costs on exports (cf. defendant's exhibit A, page 9), the

costs incurred are to be added to the market price whether or not they are charged.

On the other hand, as defendant points out in its brief, the statute is concerned with the *actual* costs incurred in placing merchandise in condition for shipment. Thus, in the instant situation, where the outer packing cases were included in the purchase price of the lighter components and were reused in packing the finished lighters for export to this country, no further *actual* cost was involved than on sales made locally.

The fact is it reasonably appears from the evidence in this case that the wooden packing costs are adequately reflected by the manufacturer's home market prices and any addition to those prices to further reflect those costs would be a form of double taxation. Since that is a condition to be avoided, I find the cost of the outer cases need not be separately shown or added to the entered values. Cf. *United States* v. *Vandegrift & Co.*, 4 Ct. Cust. Appls. 355, T.D. 33531.

As to the remaining costs involved in placing this merchandise in a packed condition ready for shipment, plaintiff's evidence, supplied through the testimony of Mr. Simon, indicates labor and material costs of about 21 cents per case of 100 dozen lighters or $0.0021 per dozen lighters. Defendant's objection to this evidence is that it was not given in a manner that would be accorded respect "under recognized principles of accounting."

The sufficiency of evidence on the issue of costs has to be judged on the facts and circumstances of each case rather than by an automatic application of an abstract standard of proof. Certainly the simplicity of the packing operation involved here was of a kind easily learned and at the same time, a kind not given to unvarying exactitude. Simon's frequent exposure to that operation affords an adequate basis for first-hand information and his testimony, although imbued with some approximation, gives a reasonably sufficient picture of the packing costs incurred. In any event, with a sum so small, any variation that might possibly exist would not effectively alter the statutory value to be found from this record.[7]

Therefore, based on the evidence before me in this case, I find the facts to be:

1. That the merchandise covered by these two consolidated appeals for reappraisement consists of various styles of cigarette lighters coming into this country from the Virgin Islands on December 26, 1957, and January 7, 1958, respectively.

---

[7] Cf. statement of approximate *costs* accepted by court in *Glanson Co.* v. *United States*, 41 Cust. Ct. 510, 512, Reap. Dec. 9208, affirmed in *United States* v. *Glanson Co.*, 43 Cust. Ct. 601, 606, A.R.D. 110, reversed on other grounds in *United States* v. *Glanson Co.*, 47 CCPA 110, C.A.D. 740.

2. That said merchandise was entered for consumption prior to the effective date of the Customs Simplification Act of 1956.

3. That said merchandise was appraised on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930 (section 402a(f), as subsequently amended).

4. That at or about the time of exportation, such or similar merchandise was not freely offered for sale for exportation to the United States.

5. That most of the 13 imported lighter styles were the subject of local sales in the Virgin Islands, in accordance with published price-lists, during the year 1957.

6. That on or about the times of exportation, all of the imported lighter styles were offered for sale for home consumption, in the principal market of Charlotte Amalie, St. Thomas, to all purchasers without restriction as to use or disposition.

7. That the prices for home consumption did not vary with the amount purchased.

8. That the V. I. Jewelry Manufacturing Company was the sole manufacturer and/or organization selling such or similar merchandise in the Virgin Islands.

9. That on or about the dates of exportation, the prices at which such merchandise was freely offered for sale for home consumption to all purchasers in the principal market of Charlotte Amalie, St. Thomas, in the Virgin Islands, in the usual wholesale quantities and in the ordinary course of trade, were the entered prices per dozen, invoiced as the home consumption prices.

10. That the cost actually incurred in placing such merchandise in condition, packed ready for shipment to the United States, was $0.0021 per dozen lighters.

And I conclude as to matters of law:

1. That pursuant to the provisions of section 301a of the 1930 Tariff Act, as amended (19 U.S.C., section 1301a), the merchandise in this case is subject to a value determination as if imported into the United States from a foreign country.

2. That foreign value, as defined in section 402(c) of the of 1930, as amended (section 402a(c), as subsequently amended), is the proper basis for appraisement of the cigarette lighters covered by these appeals for reappraisement.

3. That said statutory values are the entered prices per dozen invoiced as the home consumption prices, plus $0.0021 for packing costs.

Judgment will be entered accordingly.