(A.R.D. 141)

I. ARDITI *v.* UNITED STATES

Entry No. 900.

First Division, Appellate Term

(Decided February 15, 1962)

Appellant not represented by counsel.
*William H. Orrick, Jr.,* Assistant Attorney General (*Daniel I. Auster,* trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: This is an application for review of the decision and judgment of a judge of this court, sitting in reappraisement. The merchandise involved is Argentine canned corned beef, packed in 12-ounce tins, 48 tins to the case, imported from Peru, in May 1952.

The merchandise was entered on the basis of export value, as defined in section 402(d), Tariff Act of 1930, as it existed prior to the amendment thereof by the Customs Simplification Act of 1956, at United States $10.54 per case, net, packed. It was appraised, on the basis of foreign value, as defined in section 402(c) of the said act, as amended, at 240 Peruvian soles per case, net, packed.

On the trial of the issue below, the then counsel for the plaintiff conceded that the proper basis of value was foreign value, but contended that the correct value was 120 soles per case, net, packed, and this is substantially the position taken by the appellant before this court.

At the trial of the issue in the court below, the appellant herein gave testimony as a witness in his own behalf, and five affidavits offered by the plaintiff were received in evidence. On motion of the defendant, the record in the case of *I. Arditi* v. *United States*, the decision in which is reported in 37 Cust. Ct. at page 466, Reap. Dec. 8610, was received in evidence without objection.

The court below found, after carefully reviewing the record, that the plaintiff had not overcome the presumption of correctness which attaches to the appraised value (28 U.S.C. § 2633) and had failed to prove the claimed value of 120 soles per case. In addition, the court found that the weight of the evidence confirmed the appraised value.

It appears to be undisputed that, at or about the time of exportation of the merchandise at bar, an agreement or convention concerning trade, currency, and cultural relations existed between the Republics of Argentina and Peru, as a result of which the sale to buyers in Peru of Argentine canned corned beef was facilitated. It also appears that the seller of the merchandise at bar, a firm named Mercantil del Pacifico, S.A., Lima, acquired and offered for sale in Peru, either for home consumption or for exportation, approximately 12,000 cases of the commodity, of which the present importation, consisting of 6,522 cases, was a part. Further, that other firms in Peru offered such or similar merchandise for sale for home consumption or exportation, but it does not appear that any of the other firms were offering quantities as great as those which Mercantil del Pacifico had available.

As a matter of fact, the evidence offered by the plaintiff below establishes that the Peruvian market could not absorb for home consumption, more than 1,000 cases of such or similar canned corned beef *per annum*. In other words, the evidence establishes that there was a market in Peru for home consumption of canned corned beef such as or similar to that at bar, but it was a comparatively small one.

As supporting the price of 120 soles per case, appellant refers to the affidavits of Gustavo Eguren (plaintiff's exhibit 1), Jose Olcese (plaintiff's exhibits 2 and 3), and Edgardo Otten (plaintiff's exhibit

4). The affidavit of Jose Dacal Perez (plaintiff's exhibit 5) was offered to counter or explain statements previously made by Sr. Dacal to agents of the taxing authority upon which the appraisement of the merchandise in issue was obviously based.

These affiants identified themselves as officers of firms engaged, at the time here pertinent, in the sale in Peru of Argentine canned corned beef such as or similar to that here involved. As pointed out by the court below, the affidavits are brief and not very detailed, and do not seem to refer to specific sales actually made in Peru but, in part, to landed costs, and, in part, to a constructed price based upon such costs. The effect of the statements of Dacal and Otten is that the cost to them, as Peruvian importers of such or similar Argentine canned corned beef, was 121.47 soles per case (Dacal), or 119.32 per case (Otten), the difference in costs being relatively insignificant.

It must be borne in mind, however, that the foregoing figures are said to be the *costs* to Peruvian importers, c.i.f. Callao, that is to say, without the payment of the Peruvian import duty, amounting to approximately 51 soles per case. When the foreign value statute speaks of the "price * * * at which such or similar merchandise is freely offered for sale for home consumption," it obviously has reference to the price at which the seller offers for sale the right to consume the goods in the foreign market. It is difficult to see how such a right could be transferred without the payment of import taxes in the foreign market, and there is nothing in the record indicating that such taxes could be avoided in Peru. Consequently, the *cost* of the merchandise available for offer for sale for home consumption in Peru could hardly have been less than 170 soles per case, under Dacal's and Otten's own figures.

The affidavit of Eguren, given in 1960, states that he recalls that, in 1951 to 1953, Mercantile del Pacifico sold "for local consumption some lots of 50 cases and upwards of Argentine Corned Beef packed 48 tins of 12 ozs. each to the case, at the price of 171.00 Soles per case, duty paid, and also at the price of 120.00 Soles per case CIF Callao." Olcese (exhibit 2) says that, during the first half of 1952, Argentine corned beef, packed 48 tins of 12 ounces to the case, was freely offered and sold in the Peruvian market for consumption in Peru "in quantities of 30 cases or more at prices between 122.00 and 125.00 Soles c.i.f. Callao," and that "during that period the usual wholesale quantities of Argentine Corned Beef were from 30 cases and upwards."

Here, the price of approximately 120 soles per case is connected with *sales* for home consumption rather than landed *costs*, but again the figure is given as c.i.f. Callao, the duty-paid price being 51 soles higher.

Olcese's second affidavit (exhibit 3) relates that, in April 1952, Mercantile del Pacifico offered him 12,000 cases of Argentine canned corned beef at the equivalent price in soles of United States $12, and,

later, $10 per case, delivered, duty paid, at his warehouse, but that he rejected both offers, inasmuch as such a quantity could not be sold for home consumption in Peru "for many years to come."

It appears that the price at which Dacal offered and sold the commodity was 240 soles per case, in lots of 1 to 10 cases, and it also appears that this was the price adopted by the appraiser as representing the home consumption value.

The finding of value by the appraiser carries with it a presumption of correctness, and the burden rests upon the party who challenges its correctness to prove otherwise. (28 U.S.C. § 2633.) The quantum of proof required to overcome the presumption is that which would establish a *prima facie* case in favor of a value other than that returned by the appraiser, that is to say, which would establish every material fact, excepting facts not in dispute, with respect to such other value.

The court below found that the record evidence failed to meet this requirement.

It is undisputed that merchandise, such as or similar to that in issue, was freely offered for sale to all purchasers for home consumption in Peru at or about the time of exportation of the merchandise at bar. What we are seeking is the price at which such or similar merchandise was so offered under the terms and conditions specified in the statute, i.e., in the usual wholesale quantities and in the ordinary course of trade.

What evidence is there of offers or sales in quantities other than those in which Dacal dealt and which formed the basis for the appraised values? First, there is Olcese's affidavit, exhibit 3, concerning the offer of the 12,000 cases for home consumption in Peru.

It seems clear that an offer of so large a quantity of canned corned beef in a market which could absorb less than 1,000 cases of all sizes and brands in 1 year cannot be considered as evidencing the price at which such or similar merchandise was offered for sale for home consumption in the usual wholesale quantities in the ordinary course of trade. 12,000 cases at 1 sale was simply not a usual wholesale quantity, nor would such an offer be one in the ordinary course of trade.

The affidavits of Eguren and Olcese (exhibit 2) refer to sales of 30 and 50 cases and upwards for local consumption or consumption in Peru, and Olcese states that, during the period in question, "the usual wholesale quantities of Argentine Corned Beef were from 30 cases and upwards."

The latter statement is of a kind which has been held to constitute a statement of a conclusion of ultimate, issuable fact, which, unsupported by evidentiary facts, is insufficient to overcome the presumption of correctness of the value returned by the appraiser. *Kobe Import*

*Co.* v. *United States,* 42 C.C.P.A. (Customs) 194, C.A.D. 593, and cases therein cited.

The references in the affidavits to sales in lots of 30 and 50 cases and upwards were obviously not considered by the trial court to be evidentiary facts, for the reason that they are too indefinite and vague. They are not tied to specific sales, and neither reference is shown to be based upon such a foundation of personal knowledge as would enable an affiant to accurately state the facts.

Appellant, acting *pro se,* finds it difficult to accept the ruling that the statements of reputable affiants, such as Eguren, Olcese, and Otten, are not found to be dispositive of the matter. It is not a question of the integrity and truthfulness of the affiants; it is simply a matter that statements of persons which are of a character upon which a reasonably prudent businessman might rely for the conduct of his business are often not sufficient in form or detail to be accepted as evidence establishing a fact in a court of law. This, we believe, is the situation here.

The decision and judgment of the court below are, accordingly, affirmed. In so doing, we adopt as though here fully set out the findings of fact and conclusions of law made by the court below.

Judgment will issue accordingly.