We incorporate here by reference the findings and conclusions of the court below.

The decision below is affirmed. Judgment will be so entered.

(A.R.D. 243)

UNITED STATES *v.* PEACOCK SALES CO., INC.

Entry Nos. 0857; 0817.

## Second Division, Appellate Term

(Decided August 15, 1968)

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Glenn E. Harris*, trial attorney.), for the appellant.

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for the appellee.

Before RAO, FORD, and BECKWORTH, Judges

BECKWORTH, Judge: This is an application to review the decision and judgment of a single judge sitting in reappraisement which was reported as *Peacock Sales Co., Inc.* v. *United States*, 58 Cust. Ct. 757, R. D. 11321.

The merchandise consists of cigarette lighters in different styles which were shipped from the Virgin Islands and entered at the port of San Juan, Puerto Rico, on December 26, 1957, and January 7, 1958. The lighters had been assembled in the Virgin Islands by V. I. Jewelry Manufacturing Corporation of St. Thomas, Virgin Islands, from parts which had previously been imported into the Virgin Islands from Japan, and were sold to Peacock Sales Co., Inc., the appellee herein.

Pursuant to section 301 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954,[1] this merchandise is subject to a value determination as if imported from a foreign country. This section provides:

There shall be levied, collected, and paid upon all articles coming into the United States from any of its insular possessions, except Puerto Rico, the rates of duty which are required to be levied, collected, and paid upon like articles imported from foreign countries; except that all articles the growth or product of any such possession, or manufactured or produced in any such possession from materials the growth, product, or manufacture of any such possession or of the United States, or of both, which do not contain foreign materials to the value of more than 50 per centum of their total value, coming into the United States directly from any such possession, * * * shall be admitted free of duty upon compliance with such regulations as to proof of origin as may be prescribed by the Secretary of the Treasury. * * *

---

[1] Repealed as of August 31, 1963, and now embodied in General Headnote 3(a) of the Tariff Schedules of the United States.

In order to obtain the benefit of free entry under said section 301, appellee claims that the dutiable values are the higher entered values rather than the lower appraised values of this merchandise. Said values are as follows:

| Style No. | Appraised value (per doz.) | Entered value (per doz.) |
|---|---|---|
| 1182 | $2. 15 | $5. 50 |
| 1199 | 2. 12 | 7. 00 |
| | [3. 0889] | |
| 1253 | 2. 50 | 6. 00 |
| 1277 | 2. 12 | 5. 00 |
| 1277/B | 2. 15 | 5. 00 |
| 1279/B | 4. 09 | 10. 00 |
| 1282 | 2. 07 | 5. 00 |
| 1283 | 2. 01 | 5. 00 |
| 1286/B | 2. 70 | 6. 50 |
| 4779/B | 2. 04 | 5. 00 |
| | [2. 03] | |
| 4831 | 2. 04 | 7. 00 |
| 4968 | 2. 09 | 6. 00 |
| | [2. 12] | |
| 4968/B | 2. 12 | 6. 00 |
| 4997/B | 2. 50 | 7. 00 |
| 5105/B | 2. 48 | 6. 00 |

The merchandise was entered prior to the effective date of the Customs Simplification Act of 1956. It was appraised on the basis of cost of production, as that value is defined in section 402(f) of the Tariff Act of 1930 (redesignated section 402a(f) by the Customs Simplification Act of 1956), and the values claimed by appellee are based on foreign value, as that value is defined in section 402(c) of said tariff act, as amended by the Customs Administrative Act of 1938 (redesignated section 402a(c) by the Customs Simplification Act of 1956). It has been conceded that if cost of production is found to be the proper basis of appraisement, the appraised values represent the correct cost of production for the purpose of this case.

The trial court held that foreign value was the proper basis of appraisement and that such values were the entered values per dozen, plus $0.0021 per dozen for packing costs.

Foreign value is defined in section 402(c), as amended, as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course

of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses, incident to placing the merchandise in condition, packed ready for shipment to the United States.

On application for review, the Government contends, as it did below, that the offers and sales made by V. I. Jewelry Manufacturing Corporation (hereinafter called V. I. Jewelry) in the Virgin Islands were pure contrivances and not such offers and sales as are contemplated by the statute and that, therefore, no foreign value exists. It contends further that appellee has failed to adduce competent proof of all the costs of placing the merchandise in packed condition ready for exportation to the United States.

A detailed analysis of the evidence in this case is included in the opinion of the trial court and will not be repeated here. We note the following salient points:

V. I. Jewelry and Peacock Sales Co., Inc. (hereinafter called Peacock), were both owned by International Glass Company of which Bernard Frankel was the president and principal stockholder. V. I. Jewelry was incorporated in the Virgin Islands in 1952. Peacock and International Glass Company both had offices in New York. Peacock had an exclusive sales agreement with V. I. Jewelry whereunder merchandise produced by it could be imported into and sold in the United States only by Peacock. The prices at which Peacock sold the merchandise in the United States were fixed by Mr. Frankel.

About 149 different styles of lighters were assembled in the Virgin Islands from Japanese parts, of which 13 styles are involved herein. Lighters designated by the same number are the same style whether or not the letter "B" has been added. According to the testimony, the letter signifies only a difference in the individual cardboard container in which the article is packed.

Mr. Jerry M. Simon, who had managerial and supervising duties in the 3 firms above mentioned, testified that the landed cost of the Japanese materials ranged from $1.75 to $2 per dozen and that the home workers who assembled the materials were paid $9 per case of 100 dozen lighters. The lighters were subsequently inspected and packed for shipment at the plant of V. I. Jewelry.

According to the record, each and every style of lighter contained in the stock of the manufacturer, V. I. Jewelry, was repeatedly offered for sale for local consumption in the Virgin Islands. Such offers took the form of local newspaper advertisements, direct mail offers and, on various occasions, personal solicitations by employees of the manufacturer.

The prices at which the lighters were offered and sold in the Virgin Islands were fixed by Mr. Frankel and Mr. Simon on the basis of the

best price obtainable in the Virgin Islands as well as what comparable lighters were selling for in the United States and in the Virgin Islands. The basic unit of quantity was 1 dozen lighters but the prices did not vary with the quantity sold and were subject to no discounts. Offers were made to all purchasers and there were no restrictions on resale. The prices were $5 a dozen and up.

Between June 8, 1956, and December 31, 1957, there were more than 50 local sales accounting for 137 dozen lighters. During the same period over 345,000 dozen were sold to the United States. These local sales included sales of eight or nine of the styles involved herein.

V. I. Jewelry was the only manufacturer of cigarette lighters in the Virgin Islands during the period involved herein. However, other lighters were sold there.

The sales in the Virgin Islands were made to individuals or to retail shops which sold to the local trade and to tourists, but principally to tourists. Some of the purchasers apparently did not buy for resale but for use as gifts and some bought them as an accommodation to friends.

We have examined the newspapers which were received in evidence as collective exhibit 6 and find that advertisements of these lighters appeared in at least one of three newspapers published in the Virgin Islands, from January 14, 1957, through January 11, 1958, in every month except September and November. Some of these ads were full page, some two pages, and others of a much smaller size.

A number of pricelists are found in exhibits 1, 2, 4, and A and the testimony and the affidavits of employees of V. I. Jewelry indicate that these were mailed out from time to time to a large number of firms and individuals resident in the Virgin Islands.

The invoices in collective exhibit 7 and the lists of sales attached to exhibits 1 and 2 show sales of lighters in every month from June 1956 through May 1958. Lists of sales are also found in defendant's exhibits A, B, and K. Exhibits F, G, H, and I are affidavits of persons who purchased lighters and placed them on sale in their respective stores.

It is evident from the record that offers to sell these cigarette lighters were made methodically and regularly during the period not only to the trade but to the public in general through advertisements in local newspapers and through the mailing of pricelists. Even though the record may not establish the exact dates of mailing, there is evidence that the pricelists were in fact mailed and nothing to indicate they were not.

There is also evidence that purchasers were solicited by employees of V. I. Jewelry and that most of the styles of lighters involved herein were in fact sold in the Virgin Islands from time to time during a period of about 1½ years prior to the dates of importation.

Since the prices do not vary with the quantity, no issue of usual wholesale quantities arises. There is no controversy as to principal market, which was Charlotte Amalie, St. Thomas, nor is there any evidence that the sales were restricted in any way.

The only issue is as to the *bona fides* of the offers and sales above mentioned. Appellant claims that they should be disregarded on the following grounds: The price should have had some relationship to the price at which the merchandise was sold to the United States or some relationship to the actual cost of production; the sales were sporadic; there were no sales of some of the styles involved herein; the quantities sold in the Virgin Islands were small as compared to the quantities sold to the United States; the offers and sales were not in the ordinary course of trade; the offers were contrived and had no real substance; they were controlled by the importer and not the manufacturer; sales to tourists were sales for exportation and not for home consumption; the offers and sales were made with a view to establishing a value which would permit the free entry of the lighters into the United States under section 301, *supra*, as merchandise not containing foreign materials to the value of more than 50 percent of their total value.

In the course of its opinion, the trial court stated:

* * * While aware of the divergence between the landed costs of the parts and the home market prices (which home market prices amount to about 40 or 50 cents per lighter for most of the imports under these appeals), there is no indication that the prices charged for these lighters were disproportionate or prohibitive to their marketability or that a reasonable quantity was not on hand to satisfy any local demand. Testimony by Mr. Simon that the prices were geared to comparable items selling in the United States is unassailed. Evidence of an "accommodation" sale, attributed to a local purchaser in defendant's exhibit C, pales by comparison to the numerous affidavits of retail purchasers testifying that the lighters were acquired for resale in their places of business. The methodical and continuing efforts made to publicly and privately offer this merchandise, as well as the periodic instances of personal solicitation, appear to me to more than satisfy a finding that these lighters were "offered for sale" within the judicially construed meaning of that statutory term. *Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773.

The trial court also held that the motivation behind the offers and sales did not prevent the finding of a foreign value. It pointed out that market value is the price which the manufacturer is willing to receive and the purchasers willing to pay and stated:

The evidence before me supports a finding that the manufacturer was willing to sell and purchasers were willing to buy in the market under consideration. That such willingness on the manufacturer's part stems from considerations subsisting in a *different* market is immate-

rial. Congress has never seen fit to expressly incorporate motivation as an ingredient in the value statute.

Moreover, the existence of duty-oriented manipulations of foreign markets *within* the conditions of "existing law" was a fact of customs reality laid before and recognized by Congress during its deliberations over the elimination of foreign value as a basis of valuation under section 2 of H.R. 6040, enacted as the Customs Simplification Act of 1956, Cf. House Report No. 858, 84th Congress, 1st session, June 18, 1955, pages 4–5; Hearings before the Committee on Finance, United States Senate, 84th Congress, 2d session, June 25, 26, and 27, 1956, pages 28–29. It has long been recognized that a manufacturer has the right to prepare his merchandise for the express purpose of exposing it to the lowest duties possible. *Merritt* v. *Welsh*, 104 U.S. 694, 26 L. ed. 896; *Michaelian & Kohlberg, Inc.* v. *United States*, 22 CCPA 551, T.D. 47554. I find no reason to curtail that right as it applies to valuation determinations so long as it appears, as it does here, that the statutory elements of the "existing law" have been complied with.

Appellant relies on *Tom Jamison* v. *United States*, 42 Cust. Ct. 429, 434, Reap. Dec. 9280, wherein the court found that sales of saddles in small quantities at higher prices to tourists were sporadic sales and not to be considered in determining value. In that case, however, the majority of sales were in wholesale quantities of 10 or more at lower prices. In the instant case, all sales were in small quantities whether to tourists or retail shops and the price did not vary with the quantity. Moreover, the offers and sales here were not sporadic but were made at fairly regular intervals.

In *Rancho La Zacatosa* v. *United States*, 42 Cust. Ct. 620, Reap. Dec. 9413, a foreign value was found on the basis of offers and sales in Mexico, although the sales were in small quantities and in some cases the purchasers could not resell because Mexicans did not like okra.

See also *An-Lee, Inc.* v. *United States*, 55 Cust. Ct. 635, Reap. Dec. 11093, where the home market was less than 5 percent of the total market and *I. Arditi* v. *United States*, 48 Cust. Ct. 696, A.R.D. 141, affirmed 50 CCPA 49, C.A.D. 818, where the court held that an offer of a quantity which was much greater than the market could absorb was not in the ordinary course of trade. Conversely, offers of small quantities which the market could absorb would be in the normal course of trade.

The population of the Virgin Islands, according to the 1960 Census, was under 32,000, whereas that of the United States was over 179,000,000 (1968 World Almanac, pp. 350, 259). It is not surprising, therefore, that the Virgin Islands market was so much smaller than the United States market. In fact it appears that the number of lighters it absorbed compares favorably in relation to the population

to the number sold to the United States. The ordinary course of trade in this merchandise in the Virgin Islands was by sales in small quantities to retail shops and individuals. There is no evidence that these lighters could have been sold there in large quantities through jobbers and wholesalers.

Furthermore, it has been held that *bona fide* offers satisfy the requirements of the foreign value provisions even if there are no sales. *United States* v. *American Agar & Chemical Company*, 34 Cust. Ct. 553, A.R.D. 59, appeal dismissed 42 CCPA 244. The court there stated, page 555:

We are of the opinion from the entire record that agar-agar was a legitimate product to be offered for sale in Mexico. By that we mean that there was nothing in the nature of the product which would indicate that it was not marketable or salable in Mexico for home consumption, and apparently the only reason why it was not sold in Mexico was purchaser indifference or apathy. We are also of the opinion that real and actual efforts were made to sell the product and that the offers were not sham or feigned or made for some purpose other than actually to sell the merchandise.

In the instant case, it is obvious that cigarette lighters are legitimate products to be offered in the Virgin Islands and ones which would be bought and used by both residents and tourists. Real and actual efforts were made to sell the products. Offers were made and accepted. There is no evidence that the manufacturer ever refused to sell. In view of the fact that these lighters were assembled in the Virgin Islands and were commodities usable by consumers there, sales in said market were to be expected rather than otherwise.

Appellant also claims that the fixing of prices and the direction of the making of sales and offers by the importer through Mr. Frankel or Mr. Simon indicate that the market was controlled, citing *United States* v. *Graham & Zenger, Inc.*, 31 CCPA 131, C.A.D. 262. As stated by the trial court, the situation here is not comparable to that in the *Graham* case where the Belgian Government directly supervised the setting of minimum prices at which the Belgian manufacturers had to sell their merchandise for home consumption, with the additional condition that the merchandise so sold could not thereafter be exported. In the instant case, no restrictions were imposed on the free use, dominion over the merchandise, or disposition thereof. Here the prices were fixed by Mr. Frankel who was in effect the owner of both the importing and exporting firms. How the prices could have been set without his knowledge and consent is difficult to imagine. Price fixing alone does not indicate a controlled market. *United States* v. *Michele Diagonale*, 22 CCPA 517, T.D. 47497.

Appellant also claims that the sales to tourists were not sales for home consumption, citing *United States* v. *Getz Brothers & Co. et al.*, 55 CCPA 11, C.A.D. 927. In that case it was held that sales of plywood to Japanese trading houses were sales for exportation, since under the quota system there in force and the lack of domestic demand, the merchandise had to be exported to a group of countries which included the United States. The mills manufactured only for future delivery and received marking instructions and specifications from the American importers. Thus the merchandise was earmarked for exportation from its inception, whether or not it was sold through Japanese trading houses.

No comparable facts appear in the instant case. The lighters were not earmarked for exportation at the time of assembly and some were in fact sold in the Virgin Islands. While in all likelihood some were sold to tourists who carried them away, there was no requirement that they do so. Others were, no doubt, used immediately upon purchase, whether by a tourist or a resident.

While the offers and sales in the Virgin Islands may have been motivated primarily by a desire to benefit from the free entry provisions of section 301(a), *supra*, that factor does not establish that such offers and sales were not *bona fide* or must be disregarded by the court in finding value. It has long been held that an importer may, in the absence of fraud, have his merchandise so fashioned as to take advantage of lower tariff rates. *Merritt* v. *Welsh*, 104 U.S. 694; *Michaelian & Kohlberg, Inc.* v. *United States*, 22 CCPA 551, T.D. 47554; *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 CCPA 175, C.A.D. 304. Moreover, it is clear that a foreign merchant may, if he so desires, create a foreign market by freely offering his merchandise there or prevent the application of foreign value as a basis of appraisement by not offering his wares to all purchasers in the home market. See testimony of H. Chapman Rose, former under secretary of the Treasury, at hearings before the Committee on Finance, United States Senate, 84th Congress, 2d session, June 25, 26, 27, 1956, pages 28 and 29, and House Report No. 858, 84th Congress, 1st session, June 18, 1955, pages 4 and 5.

In the instant case, there was in fact a free market for these cigarette lighters in the Virgin Islands, although a small one. No fraud has been established or claimed. Therefore, in the absence of export value due to the exclusive sale to Peacock, the merchandise herein is properly subject to appraisement on the basis of foreign value.

Appellant claims that appellee may not prevail, nevertheless, on the ground that it has not established the costs, charges, and expenses incident to placing the merchandise in condition, packed ready for ship-

ment to the United States, which costs must be added to the prices at which the lighters were sold for home consumption for the purpose of ascertaining statutory foreign value.

It appears from the record that the same wooden crates in which the parts arrived from Japan were used in packing and shipping the lighters to the United States (100 dozen per case) and that the immediate cartons for holding the lighters were the same cartons used to import the parts from Japan. The wooden crates were packed, nailed, and strapped at the V. I. Jewelry plant prior to shipment to the United States.

The trial court held that the cost of the wooden crates need not be separately shown or added to the entered values for the purpose of establishing foreign value on the following grounds: The crates were included in the purchase price of the lighter parts from Japan. Their cost formed an integral part of the cost of the lighter parts as they were received by V. I. Jewelry, and was reflected in the home market prices of the lighters, even though the lighters were sold for home consumption uncrated. Since the crates were reused in packing the lighters for export, no further actual cost was incurred than was involved in sales made locally. Any addition to further reflect the cost of the crates would be a form of double taxation.

The trial court also found that the testimony of Mr. Simon indicated labor and material costs of packing of about 21 cents per case of 100 dozen lighters. It stated:

* * * the simplicity of the packing operation involved here was of a kind easily learned and at the same time, a kind not given to unvarying exactitude. Simon's frequent exposure to that operation affords an adequate basis for firsthand information and his testimony, although imbued with some approximation, gives a reasonably sufficient picture of the packing costs incurred. In any event, with a sum so small, any variation that might possibly exist would not effectively alter the statutory value to be found from this record.

Appellant claims that the cost of the wooden crates should be added and that the exact actual costs of packing should have been shown.

We are in accord with the trial court that the cost of the wooden cases is not to be added to the home consumption prices in order to determine foreign value. Obviously, in fixing the prices at which the lighters were sold in the Virgin Islands, which prices were substantially higher than the landed cost of the parts imported from Japan, all of the costs of importation, including packing, were taken into account. When the same crates were reused, there was no further cost to the manufacturer. Appellant contends, nevertheless, that since the

merchandise was not sold in crates in the Virgin Islands, the cost of the crates used in shipping to the United States must be added to the home market price in order to ascertain statutory foreign value. The statute, however, is concerned with a *price* which includes *cost* of containers and packing and not with whether or not the merchandise was sold in crates in the home market. If different crates had been used for exportation, their cost would have had to be added, but here the original crates were used and their cost has already been included.

Mr. Simon testified that the selling price in the Virgin Islands included the cost of the immediate cardboard containers which were used in selling them. It is not contended that any further amount should be added to cover such containers.

Mr. Simon stated further that he had spent 15 or 20 weeks a year in the Virgin Islands and that he had personally supervised the packing of the lighters there. He had also supervised the making of the payroll and knew how much the packers were paid. He said they were paid 65 cents an hour; that one person could pack 15 cases per hour; that another person nailed, strapped, and marked the cases and could handle 10 cases per hour, and that two straps per case were used, costing 5 cents each. Thus it appears that the cost of the operation was as follows, per case of 100 dozen:

| | |
|---|---|
| Cost of 2 straps at 5 cents each | $0.10 |
| Cost of packing at 65 cents an hour, handling 15 cases per hour | 0.043⅓ |
| Cost of nailing, strapping, and marking at 65 cents per hour, handling 10 cases per hour | 0.065 |
| Total – per case of 100 dozen | $0.208⅓ |

The trial court rounded this out to $0.0021 per dozen, with which we are in accord.

For the reasons stated and on the record presented, we hold that the within merchandise is subject to appraisement on the basis of foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended, and that such values are the entered prices per dozen, plus $0.0021 per dozen for packing costs.

The findings of fact and conclusions of law of the trial judge are incorporated herein by reference.

Judgment affirming the decision below will be entered accordingly.