(V.D. 156)

V. I. Jewelry Manuf. Corp. *v.* United States

Entry No. 605684.

(Decided December 29, 1969)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

Rao, Chief Judge:[1] The above-designated protest has been remanded to me by virtue of the decision in *V. I. Jewelry Manuf. Corp.* v. *United States*, 57 Cust. Ct. 7, C.D. 2709 (1966), for a determination of the value of the merchandise involved herein. The First Division of this court held the appraisement and subsequent liquidation void on the ground that the appraiser failed to give notice of a "change in the classification" resulting from a reduction in the entered value. (19 U.S.C., section 1501.)

The merchandise consisted of certain cigarette lighters manufactured by the plaintiff importer in the Virgin Islands and shipped on consignment to itself in New York, N.Y., on March 26, 1958.[2] The

---

[1] The opinion in this case was prepared by the late Chief Judge Emeritus Webster J. Oliver. It was on his desk in final form awaiting his signature, when he passed away on November 16, 1969, at the age of 81 years. In composing this opinion, Judge Oliver brought to bear the accumulation of wisdom and wealth of experience gained through his many years on the bench, 25 of them as Chief Judge of the Court, then as Associate Judge and Senior Judge. His keen insight into factual and legal questions and his considered judgment will be a great contribution to customs jurisprudence. His opinion was adopted by me, with a few minor changes, after the case was assumed by me subsequent to his death.

[2] The case was submitted on February 14, 1967. Plaintiff's brief was filed August 22, 1967. Thereafter it was stipulated between the parties that the defendant's time to file its brief be suspended pending a final decision in *Peacock Sales Co., Inc.* v. *United States*, 58 Cust Ct. 757, R.D. 11321 (1967) : aff'd August 15, 1968 in *United States* v. *Peacock Sales Co., Inc.*, 61 Cust Ct. 586, A.R.D. 243 (1968). Defendant's brief was thereafter filed on February 19, 1969, and plaintiff's reply brief was filed April 8, 1969. The sole issue in controversy in the case at bar is over the existence of an export value for such or similar merchandise, all other elements of value having been conceded or stipulated.

merchandise does not appear on the Final List promulgated by the Secretary of the Treasury (T.D. 54521) from which is withheld application of section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. This section or new law is therefore applicable to the merchandise herein.

The merchandise was appraised at $2.35 per dozen, net packed, under statutory constructed value as provided by section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

The plaintiff claims that the merchandise is subject to appraisement under statutory export value, section 402(b), and that this proper dutiable value is the entered value of $4.50 per dozen, net packed, based on offers and sales of such or similar merchandise to unrelated purchasers.

The plaintiff is claiming the higher value than that found by the appraiser in view of the provisions of section 301 of the Tariff Act of 1930, as amended, which provides for free entry of articles manufactured in insular possessions which do not contain foreign material content of more than 50 percent of the total value.

The statutes involved herein are as follows:

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 301, Tariff Act of 1930, as added by the Act of September 1, 1954, 68 Stat. 1139 (19 U.S.C., section 1301a):

There shall be levied, collected, and paid upon all articles coming into the United States from any of its insular possessions, except Puerto Rico, the rates of duty which are required to be levied, collected, and paid upon like articles imported from foreign countries; except that all articles the growth or product of any such possession, or manufactured or produced in any such possession from materials the growth, product, or manufacture of any such possession or of the United States, or of both, which do not contain foreign materials to the value of more than 50 per centum of their total value, coming into the United States directly from any such possession, and all articles previously imported into the United States with payment of all applicable duties and taxes

imposed upon or by reason of importation which are shipped from the United States, without remission, refund, or drawback of such duties or taxes, directly to the possession from which it is being returned by direct shipment, shall be admitted free of duty upon compliance with such regulations as to proof of origin as may be prescribed by the Secretary of the Treasury. In determining whether an article produced or manufactured in any such insular possession contains foreign materials to the value of more than 50 per centum, no material shall be considered foreign which, at the time such article is entered, or withdrawn from warehouse, in the United States for consumption, may be imported into the United States from a foreign country, other than Cuba or the Philippine Republic, free of duty.

Section 402(d) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 943:

(d) Constructed Value.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The record consists of the testimony of one witness, Jerry Simon, for the plaintiff and eight documentary exhibits offered by the plaintiff. The entry papers were put into evidence without being marked. The defendant offered no testimony. Both parties submitted proposed findings of fact and conclusions of law.

Mr. Simon, who testified previously in *Peacock Sales Co., Inc.* v. *United States*, *supra*, hereinafter referred to as *Peacock* (that testimony, given under date of February 16, 1966, was duly incorporated into the case at bar), testified on behalf of the plaintiff substantially as follows:

He stated that during 1957 and 1958 he was associated with International Glass Co., Peacock Sales Co. and V. I. Jewelry Corp. He

was liaison representative between International Glass Co. and V. I. Jewelry, and was also manager of V. I. Jewelry. He commuted between New York and the Virgin Islands and spent 15 to 20 weeks each year in the Virgin Islands. His duties consisted of coordinating manufacture and production; and he was also in charge of sales.

Towards the end of 1957, V. I. Jewelry started to sell its merchandise to jobbers and wholesalers in Puerto Rico. Puerto Rico was selected primarily because of its close proximity to the Virgin Islands and also because it was believed that it would be easier to introduce the merchandise into Puerto Rico, where the witness had personal contacts.

Cigarette lighters produced by V. I. Jewelry were offered for sale in Puerto Rico through advertisements in local papers, through salesmen, and through direct-mail advertising. The witness identified plaintiff's exhibit 1 as a mailing list for Puerto Rico prepared at the end of 1957. He identified plaintiff's exhibit 2, a Spanish-language advertisement appearing in San Juan in the paper "El Mundo" for January 17, 18, and 20, 1958, as an advertisement placed by V. I. Jewelry advising potential buyers in Puerto Rico that the company had hired a salesman whom they could contact to see the line. Translated, the advertisement read:

V. I. JEWELRY MANUFACTURING CORPORATION OF THE VIRGIN ISLANDS OFFERS FOR SALE TO WHOLESALERS A COMPLETE ASSORTMENT OF LIGHTERS. FOR INFORMATION: MR. IRVING FISK, SANTA CRUZ NUMBER 51, BAYAMON. TEL. 673.

Collective exhibit 3 consists of another clipping from *El Mundo*, together with the affidavit of the business manager of the paper stating that the clipping is from the edition of March 14, 1958, and a translation. The lighter here involved is described under style No. 5250 as "hand wheel, chromium, long, for ladies", at a price of $4.50 per dozen. The following notation appears at the bottom of the advertisement:

For further information please get in touch with our agent in Puerto Rico, namely Mr. Irving Fisk, Calle Santa Cruz 51, Bayamon, Puerto Rico.

CONDITIONS: FOB St. Thomas — Net, 10 days after the last of the month.

Packing included — No discounts for payment in advance.

Additional price lists: upon request. The prices are applied to any quantity. There are no discounts.

ALL THE ORDERS ARE SUBJECT TO THE ACCEPTANCE AND CONFIRMATION OF THE MANUFACTURER.

Lighter No. 1298, the style number here involved, is listed in exhibit 3 as No. 5250, but is the same lighter. Certain lighters initially were

given model numbers which were changed subsequently. This was one such instance.

Offers for export were made to the continental United States as well. Advertisements were placed in various papers in the United States, and in addition, direct mailings were utilized.

The witness identified exhibit 4 as July 18 and August 22, 1958, issues of the San Juan Island Times, and a photostatic reproduction of page 18 of the November 14, 1958, issue. The lighter in question is therein listed as item 1298 and described as "fingerwheel, long body" or "fingerwheel type lady, long, chrome satin" at $5.00 per dozen.

He identified collective exhibit 5 as the mailing list utilized for the continental United States from the beginning of 1958 through the middle of 1959. Page 4 of this exhibit lists a number of firms in Puerto Rico which, Mr. Simon stated, were among the most active or potentially active, and were therefore carried over from the original Puerto Rican list.

Collective exhibit 6 consists of mimeographed price lists covering cigarette lighters, under the letterhead of V. I. Jewelry Manufacturing Corp., dated February 28, 1958, May 1, 1958, June 11, 1958, August 18, 1958, October 1, 1958 and December 1, 1958. The involved lighter appears on the February 28, 1958, list as "fingerwheel type, long, lady size, chrome" at $4.50 per dozen. On the May 1, 1958 price list, the same item is described under style Nos. 5250 and 1298, also at $4.50 per dozen. On the price lists dated June 11, 1958, and those following, the item appears as No. 1298, under either of the foregoing descriptions, at $5.00 per dozen. The February 28th price list has the following notation at the foot thereof:

> FOR FURTHER INFORMATION, PLEASE CONTACT OUR AGENT IN PUERTO RICO—MR. IRVING FISK
> 51 SANTA CRUZ
> BAYAMON, PUERTO RICO
>
> TELEPHONE: BAYAMON–673
>
> TERMS: F.O.B. ST. THOMAS — — — NET 10 EOM
> PACKING INCLUDED — — — NO ANTICIPATION ALLOWED
>
> ADDITIONAL PRICE LISTS SENT ON REQUEST
>
> PRICES APPLY TO ALL QUANTITIES — — — NO DISCOUNTS ALLOWED
>
> ALL ORDERS SUBJECT TO FACTORY ACCEPTANCE AND CONFIRMATION

The subsequent price lists contain the same notation, with deletion of the reference to the agent in Puerto Rico.

Newspapers in which advertisements were placed in the continental United States were selected by two advertising agencies utilized by the company, the Julius Matthews Special Agency and West Holiday Newspaper Representatives. These agencies catered primarily to comparatively smaller centers of population, such as larger towns and small cities. These areas were selected in preference to larger cities, since it was believed that the competition would be somewhat less. However, despite the selection of smaller cities for newspaper advertising, the company would sell to anyone regardless of his place of residence.

Plaintiff's collective exhibit 7, consisting of page 6 of the Royal Oak (Michigan) *Daily Tribune* of July 9, 1958, page 11 of the Everett (Washington) *Daily Herald* of August 29, 1958, page 3 of the Waterville (Maine) *Morning Sentinel* of November 24, 1958, and page 7 of the Royal Oak *Daily Tribune* of December 29, 1958, was received in evidence. The witness testified that exhibit 7 was typical or representative of the advertisements placed during 1958 by V.I. Jewelry in the continental United States.

The witness identified plaintiff's exhibit 8 as an inventory control card, kept in New York under the witness' direct supervision and control. The witness had testified in the incorporated testimony as to the meaning of the various notations on the inventory control cards. The history of this particular shipment can be determined by reference to the lot number on the invoice (No. 189). The parts were manufactured in Japan by "Atlas" and were shipped out of Japan on November 28, 1957. The parts arrived in St. Thomas on January 27, 1958, and under cover of consignment invoice No. 1402, 100 dozen completed lighters were shipped to the New York branch of V.I. Jewelry on March 27, 1958, under cover of the entry on appeal.

From the card, Mr. Simon testified that actual sales were made of this lighter. One such sale was made in October of 1958. With regard to the other sale, designated as "E-106" ("E" refers to an export sale), Mr. Simon was unable to identify the date of sale. On the back of the card, where the breakdown of the landed cost is indicated, the figure after the letters "H.M.V." refers to the price for local sales in the Virgin Islands; and the figure after the letters "EXP" refers to the price charged on export sales. The export price at the time of shipment was $4.50 per dozen. At a later date, the price was raised to $5.00. (See mailing of June 11, 1958, part of collective exhibit 6.)

The reference numbers "298/B" and "298" designate the number utilized when the parts were originally shipped from Japan. When the completed lighters were shipped to the United States, the designation was changed to 1298. Although the landed-cost component-part breakdown in the official court papers herein differs somewhat from

the breakdown contained on the inventory control card, the imported lighter and that designated on the control card are one and the same item.

On this particular lighter, and with regard to lighters generally, the home market price in the Virgin Islands was somewhat higher than the export price, since the competition was less stringent in the Virgin Islands; and offers were made in Puerto Rico to jobbers and wholesalers, whereas the class of purchasers in the Virgin Islands consisted of retail shops, visiting tourists and local residents. Higher volume was anticipated on export sales than in the home market. The prices at which cigarette lighters were offered for exportation were uniform to all purchasers. No minimum quantity was required. No restrictions were placed upon the sale of the merchandise as to its resale price or the use or disposition of the merchandise.

Orders were accepted at the factory in the Virgin Islands and there was no discount for quantity.

The completed lighters were packed in the same cases in which the parts had arrived in the Virgin Islands. In the shipments before the court, the lighters were packed 50 dozen per wooden case. The established export prices included the cost of all containers and casing regardless of how many dozen were packed in a particular wooden case.

The importer herein, V. I. Jewelry Manufacturing Corp., 303 Fifth Avenue, New York City, was a branch office of the V. I. Jewelry Manufacturing Corp. of the Virgin Islands. The invoice marking "Consignment Invoice: 0412", and the value thereon of $2.35 per dozen, referred to the consignment value assigned for shipment to the New York branch office. The merchandise was shipped on consignment in order that it would be readily available in New York when orders were received.

On cross-examination, the witness testified that, loosely speaking, he was the manager of V. I. Jewelry in 1958, although John Benson was officially designated as manager. His position with International Glass was that of salesman, manager, and field representative and co-ordinator. He occupied a selling position with Peacock Sales Company. His duties, for both International Glass and Peacock included sales, office procedure, and whatever other responsibilities were assigned by the owner, Mr. Bernard Frankel. Officially, Mr. Simon was manager of the New York branch office of V. I. Jewelry.

The witness did not recall the exact number of different styles of cigarette lighters dealt in by V. I. Jewelry during the first three months of 1958. He stated positively that the price list dated February 28, 1958, contained in collective exhibit 6, was mailed within

one or two days of that date. The witness personally supervised the mailing of this price list and others, from New York.

The inventory control card, exhibit 8, covers this particular shipment under the notation "CM–189" and the card indicates that of this particular lot, 493 dozen were shipped to the United States, under consignment to Peacock; that the notation on the card "SP to Peacock" refers to the price at which V. I. Jewelry resold the merchandise to Peacock.

Exhibit 8 shows that a sale was made to a customer in Puerto Rico also in October of 1958.

The witness reaffirmed that there was no minimum quantity required on orders for cigarette lighters. The offered export price included the usual packing. However, for a smaller quantity, a case smaller than the usual wooden crate would be utilized.

With regard to the persons or firms to whom price lists were mailed (listed in exhibit 5), Mr. Simon identified several concerns as those purchasing cigarette lighters generally, namely, Herman Brenner, Pacific Premium Company, Ruby Importing Company, and Arturo Naveira, Sr. Mr. Simon stated that these firms were the only ones he remembered. These transactions took place in 1958, and this hearing was held in February of 1967, almost nine years later.

The mailing list of Puerto Rico was originally taken from the telephone book and then cut down to its present size from various inquiries received from salesmen or through the mail. The witness did not recall how the continental United States mailing list was compiled. He denied that "the vast majority" of the firms listed in exhibit 5 were firms with which International Glass and Peacock did other types of business, although several firms on the list did. One customer, Rene Lyon Company, was primarily in the artificial flower business.

On redirect-examination, the witness testified that he was John Bensen's immediate superior; that in some instances, mailings were made directly from the factory office in the Virgin Islands; that in other instances, mailings would be made from New York for convenience; but that regardless of the origin of the mailings, all orders were subject to factory acceptance in the Virgin Islands.

The sales listed on exhibit 8, starting with invoice E–106 and continuing down that column, were at the current export prices for the dates of sale, as shown on the export price lists.

Mr. Simon spent a considerable part of his time in a personal effort to develop the export market.

On recross-examination, the witness stated that he transmitted certain instructions from Mr. Bernard Frankel to Mr. Bensen and that when hired, Mr. Bensen was given to understand that he, Simon, would be his direct superior.

The factual situation and points in issue in the case at bar are substantially the same as those already resolved in an earlier case involving cigarette lighters manufactured and exported by the same manufacturer (*Peacock Sales Co., Inc.* v. *United States*, 58 Cust. Ct. 757, R.D. 11321 (1967), affirmed on appeal, *United States* v. *Peacock Sales Co., Inc.*, 61 Cust. Ct. 586, A.R.D. 243 (1968)). In that case the court found that a foreign value existed, and that an export value did not exist due to an exclusive sales arrangement to *Peacock*. However, the cigarette lighters in the *Peacock* case were entered prior to the effective date of the Customs Simplification Act of 1956, and were held dutiable on the basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. By virtue of the inapplication of the aforesaid section 402, *supra*, foreign value is no longer a proper basis of dutiable value for this later importation.

The issues at bar are limited further by stipulation between the parties that no United States value, as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, existed for such or similar merchandise, and that in the event the court should determine that no export value existed for such or similar merchandise, the correct basis of valuation is constructed value under section 402(d), and that such constructed value is that returned by the appraiser.

It is of course established that the purported appraisement having been held null and void, there exists no appraised value as such to which a statutory presumption of correctness may attach. (28 U.S.C., section 2633) However, in view of the ultimate finding herein, the point is not significant.

The only question presented to this court is whether an export value existed for the cigarette lighters herein. There is no dispute that the export value, should export value be found, is $4.50 per dozen, net packed, as entered.

It was found in the *Peacock* case that a history of continued and consistent efforts to sell cigarette lighters for local consumption in the Virgin Islands established a foreign value under section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. In that case the court determined that since offers and sales were based upon a unit quantity of one dozen, and since the prices did not vary with the quantity offered or sold, the statutory term "usual wholesale quantities" required no further consideration. It was established in the *Peacock* case that Charlotte Amalie, St. Thomas, was the principal market, and that sales and offers were not restricted to any class of purchaser, to any percentage of purchasers, or to any designated territory. The foregoing findings are applicable herein.

The fact was established in the *Peacock* case, and the same applies in the case at bar, that corporations or individuals in New York directed the operations in the Virgin Islands and instructed the factory as to prices and terms of sale. Mr. Simon testified that regardless of where the mailed offers originated, all orders for the cigarette lighters were subject to factory acceptance in the Virgin Islands.

It was established in the *Peacock* case that the terms and conditions under which V. I. Jewelry Corporation sold lighters for domestic consumption in the Virgin Islands were in the ordinary course of trade, since it appeared that during the period under consideration (December 1957–January 1958) there were no other manufacturers of cigarette lighters in the Virgin Islands. Export sales were started at the end of 1957 and the beginning of 1958, and the involved shipment was exported in March of 1958.

*Prima facie*, the same conclusions as to the ordinary course of trade apply herein, especially since the government has presented no evidence whatsoever demonstrating that other manufacturers of cigarette lighters commenced operations in the Virgin Islands at any time.

It was held irrelevant in the *Peacock* case that actual sales at the claimed foreign values were substantially smaller than total shipments to the United States in view of the existence of a ready and potential market in the Virgin Islands, and the continued and consistent sales activities in the home market.

In the instant case, actual sales of the particular lighter under consideration have been demonstrated. The record herein establishes the continued activities of the company in offering cigarette lighters to hundreds of potential purchasers in the continental United States and Puerto Rico. Sales and offers in Puerto Rico are, of course, considered to be sales and offers for export to the United States. See *Milton L. Mintzer* v. *United States*, 48 Cust. Ct. 616, R.D. 10223 (1962).

In *Peacock*, it was concluded that the sworn testimony and affidavits of the resident managers of V. I. Jewelry, the advertisements and price lists themselves, and the recorded sales at the quoted prices, were competent and substantial evidence of the effectiveness of the prices. The same conclusion applies herein.

The fundamental objection raised by the government in *Peacock* was that selling activities in the Virgin Islands were made with the intention of obtaining duty-free treatment for lighters shipped to the United States. In disposing of this contention, the court observed that the record contained no evidence to support the conclusion that the home market offerings were illusory, sham, or *otherwise than bona fide;* that there was no indication that the prices charged were disproportionate or prohibitive to their marketability in the Islands,

nor that a reasonable quantity was not on hand to satisfy any local demand. The plaintiff's motivation was not significant. The court stated, 58 Cust. Ct. at page 773:

> \* \* \* The methodical and continuing efforts made to publicly and privately offer this merchandise, as well as the periodic instances of personal solicitation, appear to me to more than satisfy a finding that these lighters were "offered for sale" within the judicially construed meaning of that statutory term. *Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773.

There is no evidence of record that the offers and sales for exportation were not *bona fide*. Nor, in the absence of proof of fraud or irregularity, do I deem it significant that the plaintiff in the Virgin Islands also had a branch office at 303 Fifth Avenue, New York City, the address also of Peacock Sales Co. and the International Glass Co. In *Peacock Sales Co., Inc.* v. *United States*, 58 Cust. Ct. 757, R.D. 11321, at pages 769–770, the court stated:

> \* \* \* I find the question as to the nature and amount of control existing between V.I. Jewelry and its corporate affiliates in the United States somewhat removed from a consideration of the normalcy of the business practices of that firm vis-à-vis its trade conducted in the Islands. More importantly, I find no reason to agree with counsel's blank assertion that the exercise of such corporate control, especially where the related firms are closely held family businesses, is outside the sphere of what may be called "ordinary" practice.

Price lists were regularly distributed to persons and firms selected as potential purchasers of cigarette lighters, and a newspaper advertising campaign was methodically carried out. In the Puerto Rican market, which the company considered to offer the most immediate potential, salesmen were hired and Mr. Simon personally devoted much time towards sales in Puerto Rico, through his personal contacts. Prices in Puerto Rico were established at somewhat lower levels than those in the Virgin Islands, to set a reasonable and competitive price to jobbers and wholesalers. *Actual sales* were made of the specific lighter here involved, during 1958, at the established export price of $4.50 per dozen or $5.00 per dozen.

The record discloses that the same activities were here carried out, with regard to the export market, which supported the court's conclusion in *Peacock* that a foreign value existed.

The export value statute, as amended by the Simplification Act of 1956, differs in some respects from the older foreign value provision. Under the amended law, consideration is to be given first to sales and then to offers and in addition, the law now contains certain clarifying definitions. In this case, the record shows that cigarette lighters were

freely sold or, in the absence of sales, freely offered in the principal market of the Virgin Islands, in the usual wholesale quantities and in the ordinary course of trade, at established export prices. The merchandise was freely sold or offered to all purchasers at wholesale without restriction (section 402(f)(1)). The conditions and practices under which the offers and sales were made were normal in the trade under consideration (section 402(f)(2) : cf. *Peacock* holding).

No distinctions need be drawn between differences, if any, among the category of purchasers, since there was *one price* to all purchasers and that price did not vary with the quantity purchased (section 402(f)(3) and (5)).

The packing issue which arose in *Peacock* is not here present, since the established export prices included the cost of all containers and packing. The fact that on certain smaller sales, a different and presumably less elaborate packing was utilized is completely immaterial, since the established export prices included the regular export packing, as required by section 402(b).

The defendant cites *United States* v. *Massce & Co. et al.*, 21 CCPA 54, T.D. 46379 (1933). The facts in that case I do not find analogous to those in the case at bar. In that case the purchaser in the United States had no contact with the Swiss manufacturer. The final acceptance or rejection of his order was vested in the manufacturer's branch office in New York without need of transmission to Switzerland, whereas in the instant case, I find as a salient feature that all orders, regardless of where mailing originated, were subject to acceptance at the factory in the Virgin Islands, the principal market. See *United States* v. *Mutual Supply Co. et al.*, 11 Cust. Ct. 461, R.D. 5950 (1943).

Based on the entire record, including also the pertinent factors established in the incorporated *Peacock* testimony, I find and conclude the following:

### FINDINGS OF FACT

1. That the merchandise involved herein consists of certain cigarette lighters exported from the Virgin Islands on March 26, 1958.

2. That the said merchandise was entered after the effective date of the Customs Simplification Act of 1956, and is not on the Final List published by the Secretary of the Treasury pursuant thereto (T.D. 54521) and that appraisement was made on the basis of constructed value, section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at $2.35 per dozen, net packed.

3. That the merchandise involved herein was shipped by the manufacturer from the Virgin Islands consigned to itself at its New York branch office.

4. That on or about the date of exportation, the plaintiff herein was the sole manufacturer of cigarette lighters in the Virgin Islands.

5. That the principal market was at the factory of the manufacturer at Charlotte Amalie, St. Thomas, Virgin Islands, where orders for the cigarette lighters were subject to acceptance.

6. That on or about the date of exportation, such cigarette lighters were freely sold, or in the absence of sales, were offered for sale in the principal market of the Virgin Islands, in the usual wholesale quantities, in the ordinary course of trade, for exportation to the United States, to all purchasers located in the continental United States and Puerto Rico without any restriction as to disposition or use by the purchaser at $4.50 per dozen, net packed, in any quantity.

### Conclusions of Law

1. That pursuant to the provisions of section 301a of the Tariff Act of 1930, as amended (19 U.S.C., section 1301a), the merchandise herein is subject to a value determination as if imported from a foreign country.

2. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement of the cigarette lighters herein.

3. That the said statutory value is the entered value of $4.50 per dozen, net packed.

Judgment will be rendered accordingly.